UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
UNITED STATES OF AMERICA,    :
                            :    16-CR-640 (DLI)
         v.                  :
                            :    December 19, 2016
NORDLICHT, et al.,           :
                            :    Brooklyn, New York
             Defendant.      :
                            :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          ROBERT CAPERS, ESQ.
                             UNITED STATES ATTORNEY
                             BY: WINSTON PAES, ESQ.
                                 ALICYN COOLEY, ESQ.
                             ASSISTANT U.S. ATTORNEYS
                             271 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           JEFFREY BROWN, ESQ.
                             MICHAEL SOMMER, ESQ.
                             JOSH KLEIN, ESQ.
                             KEVIN O'BRIEN, ESQ.
                             SCOTT KLUGMAN, ESQ.


Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             102 Sparrow Ridge Road
                             Carmel, NY 10512
                             (845) 260-1377


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

```
 1              THE CLERK:  Criminal cause for arraignment
 2   on the indictment, U.S.A. v. Mark Nordlicht, David
 3   Levy, Uri Landesman, Joseph Sanfilippo, Joseph Mann and
 4   Daniel Small.
 5              May I have counsel state your name for the
 6   record, starting with the government.
 7              MR. PAES:  Winston Paes, Alicyn Cooley,
 8   Lauren Elbert and Sarah Evans for the government.  Good
 9   afternoon, your Honor.
10              MR. BROWN:  Good afternoon, your Honor.
11   Jeffrey Brown, Deckert LLP, for Mark Nordlicht.
12              MR. SOMMER:  Good afternoon, your Honor.
13   Michael Sommer, Wilson Sonsini, for David Levy.
14              MR. KLEIN:  Good afternoon, your Honor.
15   Josh Klein, Patrillo Klein & Boxer, on behalf of Uri
16   Landesman, appearing for arraignment purposes only
17   today.
18              MR. O'BRIEN:  Kevin O'Brien, your Honor, of
19   the firm Ford O'Brien, on behalf of Mr. Sanfilippo and
20   Mr. Mann, for purposes of today.
21              MR. KLUGMAN:  Good afternoon, your Honor.
22   Scott Klugman and David Lismey (ph) for Daniel Small.
23              THE COURT:  Good afternoon, Mr. Nordlicht,
24   good afternoon, Mr. Levy, good afternoon, Mr.
25   Landesman, good afternoon, Mr. Sanfilippo, good
```

1  afternoon, Mr. Mann, and good afternoon, Mr. Small.

2  The purpose of today's proceeding is to make sure that

3  you understand the nature of the charges being made

4  against you by the United States of America and to make

5  sure that you understand that you have certain

6  constitutional rights.

7        First, you have the right to be represented

8  by an attorney at today's proceeding and at all future

9  proceedings before the Court.  If you are unable to

10  afford counsel, you may make an application to the

11  Court and the Court will appoint counsel to represent

12  you.  All of you have retained counsel, the counsel

13  that has noted their appearances on the record.

14        I will just say to Mr. Sanfilippo and Mr.

15  Mann that it is in all likelihood that you should be

16  represented by separate counsel.  Mr. O'Brien has

17  entered an appearance for the purposes of arraignment

18  today.  I believe one other person, Mr. Klein, said

19  that he was representing for the purposes of

20  arraignment today, is that correct?

21        MR. O'BRIEN:  That's correct, your Honor.

22        MR. KLEIN:  Yes, your Honor.

23        THE COURT:  Yes?

24        MR. PAES:  Your Honor, I just want to also

25  add for the record, since you're raising this issue

1  now, the government obviously is going to have some

2  objections with respect to certain conflicts of

3  interest in this case.  But for purposes of

4  arraignment, we are prepared to proceed as currently

5  represented.

6          THE COURT:  Basically, I'm just making sure

7  that you understand you have the right to counsel and

8  that you have all retained counsel, some with the

9  proviso that it may be only for today's proceeding and

10  that you may retain different counsel in the future,

11  but I'm making sure that you understand that you have

12  the right to counsel and if you're unable to afford

13  counsel, you'll make an application to the Court which

14  the Court will consider for the appointment of counsel.

15          You have the right to remain silent.  If

16  you've started to make a statement, you may stop.  Any

17  statement that you make to anyone other than your

18  attorney can be used against you.  I'm going to do down

19  the whole list of you.

20          Mr. Nordlicht, do you understand that you

21  have the right to counsel and the right to remain

22  silent, sir?

23          DEFENDANT NORDLICHT:  Yes, your Honor.

24          THE COURT:  Mr. Levy, do you understand you

25  have the right to counsel and the right to remain

1   silent?

2           DEFENDANT LEVY:  Yes.

3           THE COURT:  Mr. Landesman, do you understand

4   you have the right to counsel and the right to remain

5   silent?

6           DEFENDANT LANDESMAN:  Yes.

7           THE COURT:  Mr. Sanfilippo, do you

8   understand you have the right to counsel and the right

9   to remain silent?

10          MR. SANFILIPPO:  Yes, your Honor.

11          THE COURT:  Mr. Mann, do you understand you

12  have the right to counsel and the right to remain

13  silent?

14          MR. MANN:  Yes, your Honor.

15          THE COURT:  Mr. Small, do you understand you

16  have the right to counsel and the right to remain

17  silent?

18          MR. SMALL:  Yes, your Honor.

19          THE COURT:  Starting with you, Mr.

20  Nordlicht.  Have you had the opportunity to review the

21  indictment in this matter with your attorney?

22          DEFENDANT NORDLICHT:  I have, yes.

23          THE COURT:  Do you understand the charges

24  that are being made against you?

25          DEFENDANT NORDLICHT:  Yes.

1          THE COURT:  Mr. Brown, have you had the

2   opportunity to review the indictment with your client?

3          MR. BROWN:  We have, your Honor.  We waive

4   any public reading.

5          THE COURT:  Is Mr. Nordlicht prepared to

6   enter a plea today?

7          MR. BROWN:  He is.

8          THE COURT:  And the plea is?

9          DEFENDANT NORDLICHT:  Not guilty.

10          THE COURT:  A not guilty plea shall be

11   entered on behalf of Mr. Mark Nordlicht to all counts

12   in the indictment pertaining to him.

13          Mr. Levy, have you had the opportunity to

14   review the indictment with your attorney?

15          DEFENDANT LEVY:  Yes, your Honor.

16          THE COURT:  Do you understand the charges

17   that are being made against you?

18          DEFENDANT LEVY:  Yes, your Honor.

19          THE COURT:  Mr. Sommer, have you had the

20   opportunity to review the indictment with your client?

21          MR. SOMMER:  Yes, your Honor.  We waive any

22   public reading.

23          THE COURT:  Is your client prepared to enter

24   a plea today?

25          MR. SOMMER:  He is.

1            THE COURT:  And the plea is?

2            DEFENDANT LEVY:  Not guilty.

3            THE COURT:  Not guilty pleas shall be

4    entered on behalf of David Levy to all counts in the

5    indictment pertaining to him.

6            Mr. Landesman, have you had the opportunity

7    to review the indictment with your attorney?

8            DEFENDANT LANDESMAN:  I have.

9            THE COURT:  Do you understand the charges

10   that are being made?

11           DEFENDANT LANDESMAN:  I do.

12           THE COURT:  Mr. Klein, have you had the

13   opportunity to review the indictment with your client?

14           MR. KLEIN:  Yes, your Honor.

15           THE COURT:  Do you believe he understands

16   the charges?

17           MR. KLEIN:  Yes, your Honor, and we waive

18   its public reading.

19           THE COURT:  Is Mr. Landesman prepared to

20   enter a plea?

21           MR. KLEIN:  He is.

22           THE COURT:  And the plea is?

23           DEFENDANT LANDESMAN:  Not guilty.

24           THE COURT:  Not guilty pleas shall be

25   entered on behalf of Uri Landesman to all charges made

1  against him in the indictment.

2          Mr. Sanfilippo, have you had an opportunity

3  to review the indictment with your attorney?

4          DEFENDANT SANFILIPPO:  I have, your Honor.

5          THE COURT:  Do you understand the charges?

6          DEFENDANT SANFILIPPO:  I do.

7          THE COURT:  Mr. O'Brien, on behalf of Mr.

8  Sanfilippo, have you had the opportunity to review the

9  indictment with him?

10         MR. O'BRIEN:  Yes, your Honor, we reviewed

11 it together.

12         THE COURT:  Do you believe he understands

13 the charges?

14         MR. O'BRIEN:  He does.

15         THE COURT:  Do you waive the public reading?

16         MR. O'BRIEN:  Yes, we waive.

17         THE COURT:  Is your client prepared to enter

18 a plea?

19         MR. O'BRIEN:  Yes.

20         THE COURT:  And the plea is?

21         DEFENDANT SANFILIPPO:  Not guilty, your

22 Honor.

23         THE COURT:  Not guilty pleas shall be

24 entered on behalf of Joseph Sanfilippo to all counts in

25 the indictment pertaining to him.

1              Mr. Mann, have you had the opportunity to

2     review the indictment with your attorney?

3              DEFENDANT MANN:  Yes.

4              THE COURT:  Do you understand the charges?

5              DEFENDANT MANN:  Yes, your Honor.

6              THE COURT:  Mr. O'Brien, have you had the

7     opportunity to review the indictment with Mr. Mann?

8              MR. O'BRIEN:  Yes, your Honor, we reviewed

9     it.

10             THE COURT:  Do you believe he understands

11    the charges?

12             MR. O'BRIEN:  He does.

13             THE COURT:  Would you like me to read the

14    indictment aloud?

15             MR. O'BRIEN:  No, we waive the reading.

16             THE COURT:  Is Mr. Mann prepared to enter a

17    plea today?

18             MR. O'BRIEN:  He is.

19             THE COURT:  Mr. Mann, what is your plea?

20             DEFENDANT MANN:  Not guilty, your Honor.

21             THE COURT:  Not guilty pleas shall be

22    entered on behalf of Joseph Mann to all counts in the

23    indictment pertaining to him.

24             THE COURT:  Mr. Small, have you had the

25    opportunity to review the indictment with your

1   attorney?

2           DEFENDANT SMALL:  Yes, your Honor.

3           THE COURT:  Do you understand the charges

4   that are being made against you?

5           DEFENDANT SMALL:  Yes, I do.

6           THE COURT:  Mr. Klugman, have you had the

7   opportunity to review the indictment with your client?

8           MR. KLUGMAN:  I have, your Honor.

9           THE COURT:  Do you believe he understands

10  the charges?

11          MR. KLUGMAN:  I do.

12          THE COURT:  Would you wish me to read the

13  indictment aloud?

14          MR. KLUGMAN:  We waive public reading, your

15  Honor.

16          THE COURT:  Is your client prepared to enter

17  a plea today?

18          MR. KLUGMAN:  He is, your Honor.

19          THE COURT:  And that plea is, Mr. Small?

20          DEFENDANT SMALL:  Not guilty, your Honor.

21          THE COURT:  Not guilty pleas shall be

22  entered on behalf of Daniel Small to all counts in the

23  indictment pertaining to him.

24          I've been presented with an application and

25  order seeking to exclude the time between today and

1   January 12th, 2017 from the computation of the time

2   period within which a trial on the charges against you

3   defendants must commence.  This is an application

4   that's being made in each of these cases.  So although

5   I trust that you discussed this matter with your

6   attorneys, I need to make sure for myself that you

7   understand the nature of this request and its

8   consequences.

9           So permit me to inform you that the

10  government has 70 days from the date that you are

11  arraigned on the indictment, which is what we just

12  finished when we entered your not guilty plea -- the

13  government has 70 days to commence the trial against

14  you in this matter.  If the government does not

15  commence the trial within 70 days, your attorney can

16  come into the Court and ask that the charges against

17  you be dismissed as a violation of your rights under

18  the Speedy Trial Act.

19          This application is stopping that 70-day

20  Speedy Trial Act clock today and will not start that

21  clock to count the 70 days until January 12th, 2017.  I

22  believe, but please tell me if I am correct, that that

23  is the date that has been set by the Honorable Dora

24  Irizzary, who is the chief judge who will be overseeing

25  this matter and is the assigned district judge to try

1   this case.  She's also the chief judge in this

2   district.  I believe that's the date that she has given

3   you for the next conference.

4            Is that correct?

5            MR. PAES:  That is correct, your Honor.

6            THE COURT:  Has this application that you're

7   making to the duty magistrate been run by Judge

8   Irizarry's chambers?

9            MR. PAES:  We have, your Honor.

10           THE COURT:  Very good.

11           Then I'm going to start again with you, Mr.

12  Nordlicht.  Mr. Nordlicht, do you understand this

13  application and its consequences?

14           DEFENDANT NORDLICHT:  Yes, your Honor.

15           THE COURT:  Have you discussed this matter

16  with your attorney?

17           DEFENDANT NORDLICHT:  Yes.

18           THE COURT:  Do you have any questions for

19  the Court regarding this exclusion of time from the

20  Speedy Trial Act?

21           DEFENDANT NORDLICHT:  No.

22           THE COURT:  Ms. Yuen (ph), can you present

23  this to Mr. Nordlicht?

24           Mr. Nordlicht, is this your signature on

25  this order?

```
 1                    DEFENDANT NORDLICHT:  It is, your Honor.

 2                    THE COURT:  Thank you.

 3                    Mr. Levy, have you discussed this exclusion

 4      of time with your attorney?

 5                    DEFENDANT LEVY:  Yes, your Honor.

 6                    THE COURT:  Do you understand the

 7      consequences of this request?

 8                    DEFENDANT LEVY:  Yes.

 9                    THE COURT:  Do you have any questions for me

10      regarding this exclusion of time?

11                    DEFENDANT LEVY:  No, your Honor.

12                    THE COURT:  I'll ask that this be presented

13      to Mr. Levy.

14                    Is that your signature, sir?

15                    DEFENDANT LEVY:  Yes, your Honor.

16                    THE COURT:  Thank you.

17                    Mr. Landesman, have you discussed this

18      matter with your attorney?

19                    DEFENDANT LANDESMAN:  I have.

20                    THE COURT:  Do you have any questions for

21      the Court regarding this exclusion?

22                    DEFENDANT LANDESMAN:  I do not.

23                    THE COURT:  Mr. Landesman, is this your

24      signature on the form?

25                    DEFENDANT LANDESMAN:  It is.
```

```
1                    THE COURT:  Thank you.

2                    Mr. Sanfilippo, have you discussed this

3   exclusion of time with your attorney?

4                    DEFENDANT SANFILIPPO:  I have, your Honor.

5                    THE COURT:  Do you understand this exclusion

6   and its consequences?

7                    DEFENDANT SANFILIPPO:  I do.

8                    THE COURT:  Do you have any questions for

9   the Court regarding this exclusion of time?

10                   DEFENDANT SANFILIPPO:  I do not.

11                   THE COURT:  Can you pass this to Mr.

12  Sanfilippo?

13                   Is this your signature, sir, on this form?

14                   DEFENDANT SANFILIPPO:  Yes, it is, your

15  Honor.

16                   THE COURT:  Mr. Mann, have you discussed

17  this matter with your attorney?

18                   DEFENDANT MANN:  Yes, your Honor.

19                   THE COURT:  Do you have any questions for

20  the Court regarding the exclusion of time?

21                   DEFENDANT MANN:  No, your Honor.

22                   THE COURT:  Is this your signature on this

23  form?

24                   DEFENDANT MANN:  Yes, it is.

25                   THE COURT:  Do you understand the
```

1    consequences of this exclusion?

2            DEFENDANT MANN:  Yes, your Honor.

3            THE COURT:  Thank you.

4            Mr. Small, have you discussed the exclusion

5    of time with your attorney?

6            DEFENDANT SMALL:  Yes, your Honor.

7            THE COURT:  Do you understand the exclusion

8    of time and its consequences?

9            DEFENDANT SMALL:  Yes, I do.

10           THE COURT:  Do you have any questions for

11   the Court regarding this exclusion of time?

12           DEFENDANT SMALL:  No, your Honor.

13           THE COURT:  Ms. Yuen, can I ask you to

14   present this?

15           THE CLERK:  Yes.

16           THE COURT:  Is this your signature?

17           DEFENDANT SMALL:  Yes, it is.

18           THE COURT:  Thank you very much, Mr. Small.

19           What is the basis for the exclusion of time?

20           MR. PAES:  Sure, your Honor.  Your Honor,

21   it's a complex case, as I think is somewhat evident

22   from the indictment itself.  There's also an enormous

23   amount of discovery in this case, in excess of five

24   terabytes of data that's going to be produced to the

25   defendants shortly and on a rolling basis.  So in light

1  of all of that, the complexity of the charges as well

2  as the amount of discovery in this case, we believe an

3  exclusion of time is appropriate to allow the

4  defendants time to go over the discovery and make a

5  decision on how to proceed.

6           THE COURT:  Mr. Brown, do you agree with the

7  government's version of why the exclusion of time is

8  necessary?

9           MR. BROWN:  We do, and we consent, your

10  Honor.

11           THE COURT:  Thank you.

12           Mr. Sommer, do you agree?

13           MR. SOMMER:  Yes, your Honor.

14           THE COURT:  Mr. Klein, do you agree?

15           MR. KLEIN:  Yes, your Honor.

16           THE COURT:  Mr. O'Brien, on behalf of the

17  two men you're standing up for today, do you agree?

18           MR. O'BRIEN:  We agree, your Honor.

19           THE COURT:  Mr. Klugman, on behalf of Mr.

20  Small, do you agree?

21           MR. KLUGMAN:  Yes, your Honor.

22           THE COURT:  The for the reasons stated on

23  the record, the Court grants this exclusion of time and

24  excludes the time between today and January 12th, 2017,

25  where Judge Irizarry will be holding a conference on

1    that date in her courtroom at 11:00 a.m.

2              I have been presented with orders setting

3    conditions of release on bond for all of the defendants

4    except for Mr. Small, but we will hear your

5    application.  I'm going to work through them one at a

6    time.  I imagine some of them are similar.

7              So why don't you give me a rundown, Mr.

8    Paes, of how you arrived at these bond conditions.  I

9    do note that I have reviewed the Pretrial Services

10   reports and I do believe that all of these defendants

11   have no criminal record, is that correct?

12             MR. PAES:  That is correct, your Honor.

13             THE COURT:  A number of them I believe

14   you're asking for there to be collateral put up for

15   their release, some of them cash bond, some of them

16   properties, is that correct?

17             MR. PAES:  That is correct, your Honor.

18             THE COURT:  Why don't you give me the

19   overview and then we'll work our way through each bond.

20             MR. PAES:  Sure, your Honor.  I think in

21   terms of the defendants, we have ranged the total

22   amount of bond ranging from five million dollars to one

23   million dollars.  That is based on part of the level of

24   culpability as well as looking at the resources they

25   have available.  And considering the fact that there's

1  obviously a flight risk, like in every case where you

2  have defendants who have resources as well as ties in

3  this case to foreign countries --

4          THE COURT:  So let me ask, have the

5  passports been brought to courthouse today?

6          MR. PAES:  They have, your Honor.  The agent

7  has them and is ready -- with the exception of one of

8  them -- Mr. Sanfilippo I believe does not have a

9  passport.  There's another defendant, I believe Mr.

10  Landesman, if I'm correct, who we've agreed will

11  surrender his passport over the next day or two that

12  they haven't collected.  But everybody else's passports

13  Agent Minsky (ph) has and he can turn them over to

14  Pretrial Services.

15          THE COURT:  So that's going to be required

16  before any bail is granted, that the Pretrial Services

17  officer will hold the passport until the time that

18  these charges have been adjudicated.  They will give

19  you a receipt for the passport.  Mr. Sanfilippo is the

20  only one who doesn't have a passport but nobody is

21  allowed to apply for any passport while this matter is

22  pending.

23          Mr. Landesman, yours is at home, sir?

24          DEFENDANT LANDESMAN:  Uh-huh.

25          THE COURT:  You're going to have to make

```
1    your way back to the courthouse by tomorrow if you're
2    released, to turn over the passport.  Do you
3    understand?
4                DEFENDANT LANDESMAN:  To this courthouse?
5                THE COURT:  To this courthouse.
6                MR. KLEIN:  Your Honor, we're going to
7    obtain the passport and turn it over.
8                THE COURT:  When he's saying this
9    courthouse, I don't know which other courthouse he was
10   thinking.
11               DEFENDANT LANDESMAN:  There are plenty of
12   courthouses in New York.  I don't know.
13               THE COURT:  You'll get your passport to this
14   Pretrial Services office.
15               DEFENDANT LANDESMAN:  He'll take care of it.
16               THE COURT:  And they will give you a
17   receipt.
18               With that being said, I do believe that the
19   initial conditions at the top are the same for
20   everybody, is that correct, meaning that there is going
21   to be a bond, it's going to be a different amount, but
22   everybody is restricted in their travel.  You've given
23   some people Southern/Eastern District and some people
24   Southern/Eastern District and New Jersey and some
25   Southern/Eastern District and District of Maryland with
```

 1   prior notice.

 2            MR. PAES:  That is correct, your Honor.

 3   We've done that in the case of New Jersey to

 4   accommodate I believe family visits.  With respect to

 5   Maryland, I believe a work issue.  So we've talked to

 6   defense counsel and tried to accommodate requests that

 7   we believed were reasonable and yet still protect the

 8   government's interest in terms of any risk of flight

 9   issues.

10            THE COURT:  I believe that Mr. Klein had

11   another issue so if you can let me know what that is.

12            MR. PAES:  And we wanted to add as well the

13   District of New Jersey for Mr. Landesman.

14            MR. KLEIN:  Thank you.

15            THE COURT:  It says for Mr. Landesman

16   District of Maryland with prior notice to Pretrial.  So

17   you want it to be Southern/Eastern District, New Jersey

18   and District of Maryland with prior notice to Pretrial?

19            MR. KLEIN:  Yes, your Honor.

20            MR. PAES:  That's fine.

21            THE COURT:  Is there any objection from the

22   government?

23            MR. PAES:  No, your Honor.

24            THE COURT:  So on Mr. Landesman, I'm going

25   to add New Jersey.

1          We're starting with Mr. Nordlicht.  Mr.
2  Nordlicht, this bond is a five-million-dollar bond.
3  It's going to be signed by just Mr. Nordlicht and his
4  wife, is that correct?

5          MR. BROWN:  The defendant's father's
6  signature is on the bond as well, your Honor.

7          THE COURT:  I need whoever is signing the
8  bond to come before me, so I'm going to need to see
9  everybody in the courtroom, but wait one moment.  So
10  it's his dad and his wife who are signing the bond?

11          MR. BROWN:  Correct.

12          THE COURT:  And it's $500,000 cash put into
13  the Court's registry, is that correct?

14          MR. PAES:  That is correct, your Honor.

15          THE COURT:  But there's no property being
16  posted.

17          MR. PAES:  No, your Honor.

18          THE COURT:  As far as Pretrial, he'll be
19  placed under the express supervision of Pretrial and he
20  is subject to random visits by Pretrial and he must
21  report to Pretrial as directed, is that correct?

22          MR. PAES:  That is correct, your Honor.

23          THE COURT:  Okay.  Those are the only other
24  conditions?

25          MR. PAES:  Yes, your Honor.

1          THE COURT:  And the $500,000 is going to be

2     posted by when?

3          MR. PAES:  It's my understanding that

4     they're prepared to post it as soon as your Honor signs

5     the order.

6          THE COURT:  So they will go downstairs and

7     post it with the clerk's office today.

8          MR. PAES:  Correct.

9          THE COURT:  Before Mr. Nordlicht is

10    released.

11         MR. BROWN:  Correct.

12         THE COURT:  So can I ask that his wife and

13    his father please come forward?  Because Mr. Nordlicht

14    is going to have to make way and I have to see his

15    father, if we could just have a path, thank you.

16         Come on up, sir.

17         THE CLERK:  The judge will ask you both some

18    questions on the record so I just need to affirm you,

19    okay?

20         (Sureties are sworn.)

21         THE CLERK:  Can you just state your name for

22    the record?

23         MS. KALTER:  Talia Kalter (ph).

24         THE CLERK:  Thank you.

25         Sir, your name for the record?

1              MR. NORDLICHT:  Jules Nordlicht.

2              THE COURT:  Ms. Kalter and Mr. Nordlicht,

3    I'm sorry for the circumstances that bring you to the

4    courthouse today.  As you've been  made aware, your

5    husband, your son has been charged with a very serious

6    federal crime.  In order for him to be released pending

7    his trial on these charges, he has asked both of you to

8    come forward to sign on this bond.

9              In federal court, a bond is a promise.  If

10   for any reason, Mr. Nordlicht does not live up to his

11   obligation, in other words he does not come back to

12   court when he's directed to do so, the two of you will

13   have executed this bond.  It's a five-million-dollar

14   promise.  The government will be able to go after you

15   in any combination, in any order, to get the full

16   amount of the bond.

17             Mr. Nordlicht, I understand you're Mark

18   Nordlicht's father, correct?

19             MR. NORDLICHT:  Correct.

20             THE COURT:  Are you still working, sir?

21             MR. NORDLICHT:  No.

22             THE COURT:  What did you do before you

23   stopped working?

24             MR. NORDLICHT:  I was a commodities broker.

25             THE COURT:  Mr. Nordlicht, you understand

```
1    that this is a five-million-dollar obligation, sir.

2              MR. NORDLICHT:  Yes.

3              THE COURT:  Again, you're not posting your

4    property but if you own your premises, they could go

5    after anything you own, even if you encouraged your son

6    to come to the courthouse.  If he fails to live up to

7    his obligations, the government will have your

8    signature on this page and be able to go after you for

9    the full amount.

10             Do you understand that?

11             MR. NORDLICHT:  I do.

12             THE COURT:  Ms. Kalter, this is your

13   husband?

14             MS. KALTER:  Yes.

15             THE COURT:  I read in the Pretrial Services

16   report that you're an attorney, ma'am.

17             MS. KALTER:  Yes.

18             THE COURT:  And that you work with your

19   father.

20             MS. KALTER:  Yes.

21             THE COURT:  So you're now supporting the

22   family?

23             MS. KALTER:  I suppose, I don't know.

24             THE COURT:  Do you understand that this is a

25   five-million-dollar obligation?
```

```
1                  MS. KALTER:  Yes, I do.

2                  THE COURT:  That if for any reason Mr.

3    Nordlicht does not live up to his obligations, that

4    they will be able to go after you for the full amount

5    of this bond?

6                  MS. KALTER:  Yes, I do.

7                  THE COURT:  Can I pass this forward and get

8    you to both tell me -- who lives on Trainor Drive?

9    That's you, Ms. Kalter?

10                 MS. KALTER:  yes.

11                 THE COURT:  And you live on Beach Street in

12   Long Beach, sir?

13                 MR. NORDLICHT:  Yes.

14                 THE COURT:  So I'll ask because I would not

15   know your signatures.  Ms. Kalter, is this your

16   signature on the bond?

17                 MS. KALTER:  Yes, it is.

18                 THE COURT:  Is that your signature, Mr.

19   Nordlicht?

20                 MR. NORDLICHT:  Yes.

21                 THE COURT:  You boh want to be suretors on

22   this bond?

23                 MS. KALTER:  Yes.

24                 THE COURT:  Mr. Nordlicht?

25                 MR. NORDLICHT:  Yes.
```

1          THE COURT:  Then thank you very much.  You
2    can both be seated.
3          Again, this is a five-million-dollar bond.
4    Mr. Nordlicht shall stay in the Southern/Eastern
5    Districts of New York, which your attorney will be able
6    to tell you what that means, and you may go to the
7    District of New Jersey without court permission.  If
8    for any reason you need to go anywhere else, and I'm
9    saying somebody in Connecticut got ill suddenly, you
10   need the Court's permission.
11         Do you understand that, Mr. Nordlicht?
12         DEFENDANT NORDLICHT:  Yes.
13         THE COURT:  And that you shall avoid contact
14   with any of the codefendants except in the presence of
15   counsel.  You must also avoid all contact and not
16   associate with any investors other than at the
17   direction of any liquidator, trustee or monitor.
18         Do you understand that?
19         DEFENDANT NORDLICHT:  Yes.
20         THE COURT:  And that you will go or somebody
21   will go and deposit $500,000 into the court registry as
22   cash before you are released here today.
23         Do you understand that?
24         DEFENDANT NORDLICHT:  Yes.
25         THE COURT:  And that you are placed under

1   the express supervision of Pretrial Services.  You're

2   subject to random visits by Pretrial Services and you

3   must report to Pretrial Services as directed.

4           Do you understand that?

5           DEFENDANT NORDLICHT:  Yes.

6           THE COURT:  And that you will surrender your

7   passport today.

8           The agents are saying they have Mr.

9   Nordlicht's passport?

10          MR. PAES:  That is correct, your Honor.

11          THE COURT:  So it will be given to Pretrial

12  Services today.

13          MR. PAES:  Yes, your Honor.  In fact --

14          THE COURT:  Mr. Nordlicht's attorney will

15  have a receipt for that passport.  I assume that you

16  have just sent a family member down to deposit the

17  $500,000.  Is that correct or not yet?

18          MR. BROWN:  I think until we have the order

19  signed by your Honor, we're not able to make the

20  deposit.

21          THE COURT:  Can I have the cash deposit slip

22  for Mr. Nordlicht?

23          THE CLERK:  Yes, it's right here.

24          THE COURT:  Because I'm going to wait to

25  sign the bond until I'm told that it's been deposited.

1    Now this can be given to whoever is going to go make

2    the deposit.

3            MR. PAES:  Your Honor, for the record, I

4    just turned over the passport for Mr. Nordlicht to

5    Pretrial Services.

6            THE CLERK:  Yes, Pretrial has it.

7            THE COURT:  You'll get a receipt for that,

8    Mr. Nordlicht.

9            Was there anything else with respect to Mr.

10   Nordlicht?

11           MR. PAES:  No, your Honor.

12           THE COURT:  As soon as I hear that the cash

13   has been deposited, I'll sign the bond.  Mr. Nordlicht,

14   you'll live up to the obligations and set up whatever

15   the schedule is with Pretrial Services.

16           Was there something else that needed to be

17   addressed, Mr. Brown?

18           MR. BROWN:  Yes, Judge, with your

19   permission.  In order for Mr. Nordlicht to make some

20   religious obligations that he hasn't been able to make

21   in light of security concerns that were expressed by

22   the marshals, I'd ask for him to be excused into the

23   cell block to expedite his departure.  But I'm also due

24   in front of Judge Matsumoto sort of immediately on a

25   parallel proceeding.  So with your permission --

1          THE COURT:  So this is what I will do.  I

2    will sign this order.  Have them start processing.

3    Again, Marshals, if you could check back with me just

4    to make sure that we have the bond signed, that the

5    cash was surrendered.  How is that?

6          MARSHAL:  If you want to wait, we can wait

7    him in the cell block until they come back up with the

8    paperwork.  Once we have it, we can discharge him.

9    Ultimately, it's up to the agents to discharge him at

10   this point.  He's not in our custody, he's in the

11   agents' custody.

12         THE COURT:  So he'll be held up here until

13   the agents discharge him.

14         Agents, you don't have a problem with them

15   holding him back there until he's discharged, is that

16   correct?  Okay.

17         MR. PAES:  That's fine, your Honor.

18         THE COURT:  Mr. Nordlicht and Mr. Brown,

19   you're free to go to Judge Matsumoto and he's able to

20   be taken into the cell block until the time that the

21   cash is surrendered.  Thank you.

22         MR. BROWN:  Thank you.

23         THE COURT:  Mr. Levy, this is a two-million-

24   dollar bond and you must remain in the Southern

25   District of New York, the Eastern District of New York

1  and the District of New Jersey.  Like Mr. Nordlicht,

2  you cannot speak with any of the codefendants except in

3  the presence of counsel.  You are to avoid all contact

4  and not associate with any investor other than at the

5  direction of any liquidator, trustee or monitor.

6  　　　　　　Do you understand that?

7  　　　　　　DEFENDANT LEVY:  Yes, your Honor.

8  　　　　　　THE COURT:  The passport of Mr. Levy shall

9  be surrendered.  Is that being done by the agent?

10  　　　　　　MR. PAES:  That is correct, your Honor.  I'm

11  giving it right now to Pretrial Services.

12  　　　　　　THE COURT:  Thank you.

13  　　　　　　You shall not apply for any other passport.

14  You're placed under the express supervision of Pretrial

15  Services, subject to random visits by Pretrial Services

16  and must report to that agency as directed.

17  　　　　　　Do you understand that?

18  　　　　　　DEFENDANT LEVY:  Yes, your Honor.

19  　　　　　　THE COURT:  The two people that are signing

20  for you are Isaac Levy and Michael Levy.  Are they in

21  court?  Thank you.  Can I have the deputy swear them

22  please?

23  　　　　　　(Sureties are sworn.)

24  　　　　　　THE CLERK:  State your name for the record.

25  　　　　　　MR. MICHAEL LEVY:  Michael Levy.

```
 1                    THE CLERK:  Thank you.

 2                    MR. ISAAC LEVY:  Isaac Levy.

 3                    THE CLERK:  Thank you very much.

 4                    THE COURT:  Mr. and Mr. Levy, I'm sorry

 5   again for the circumstances that bring you to the

 6   Courthouse today.  As you understand, David Levy has

 7   been charged with a serious federal crime and in order

 8   for him to be released on bond, he has asked you to

 9   come sign this order setting the conditions of release

10   on bond.  You've heard what the conditions are.  It is

11   a two-million-dollar bond and you are required to

12   deposit $200,000 into the registry of the Court before

13   he will be released.

14                    MR. SOMMER:  Your Honor, I'm sorry to

15   interrupt.

16                    THE COURT:  Yes.

17                    MR. SOMMER:  My understanding of my

18   discussions with the government is -- they've seen our

19   bank check for $200,000.  My understanding is they have

20   agreed to have your Honor sign the bail order and then

21   we can bring the check downstairs.

22                    THE COURT:  Is that correct?

23                    MR. PAES:  That is correct, your Honor.

24                    THE COURT:  Very good.

25                    Mr. Levy, I assume you're David Levy's
```

```
 1   father.

 2             MR. ISAAC LEVY:  Yes, ma'am.

 3             THE COURT:  And I assume, Mr. Michael Levy,

 4   you're his brother?

 5             MR. MICHAEL LEVY:  Yes.

 6             THE COURT:  Older brother or younger

 7   brother?

 8             MR. MICHAEL LEVY:  Younger brother, your

 9   Honor.

10             THE COURT:  Younger brother.

11             MR. MICHAEL LEVY:  Yes.

12             THE COURT:  And here you're coming to sign

13   on his bond.

14             MR. MICHAEL LEVY:  Absolutely, your Honor.

15             THE COURT:  What do you do for a living,

16   sir?

17             MR. MICHAEL LEVY:  Software developer.

18             THE COURT:  Mr. Levy, Senior, what do you do

19   for a living?

20             MR. ISAAC LEVY:  I was in healthcare for

21   many years and now I do various businesses and business

22   consulting.

23             THE COURT:  You understand that if for any

24   reason, Mr. David Levy does not report as he is

25   directed or if he violates any conditions set forth in
```

1   this order, that the full amount of the bond, two

2   million dollars, will be due to the government.  And

3   even if you've urged him to do everything he's supposed

4   to, if for any reason he gets scared, he tries to run,

5   not only will they find him and bring him back to

6   court, but at that point, he will likely not be

7   released again and you'll be on the hook for the full

8   amount of the bond.

9            MR. ISAAC LEVY:  Yes, ma'am.

10           THE COURT:  Do you still want to sign the

11  bond?

12           MR. ISAAC LEVY:  Yes, your Honor.

13           THE COURT:  Mr. Paes, make sure I don't let

14  Mr. Nordlicht go.  I did not give him his bail

15  warnings.  So when he comes back in, I must give the

16  bail warnings before he's released, okay?

17           MR. PAES:  Sure.

18           THE COURT:  Thank you.  I'll pass this

19  forward.

20           MR. ISAAC LEVY:  Yes, your Honor.  Yes,

21  that's my signature.

22           MR. MICHAEL LEVY:  Yes, that's my signature.

23           THE COURT:  Thank you very much.  Then you

24  may be seated.

25           MR. ISAAC LEVY:  Thank you, your Honor.

```
1              THE COURT:  I'm going to wait until I get to

2    the end so I can give everybody their bail warnings at

3    one time.

4              Mr. Mann.

5              MR. SOMMER:  Your Honor, in that

6    circumstance --

7              THE COURT:  Yes.

8              MR. SOMMER:  Can Mr. Levy be free to go back

9    to the cell block so he also can perform a religious

10   service?

11             THE COURT:  As long as he's coming back

12   before me so I can give the bail warnings, that's fine

13   with me.

14             MR. SOMMER:  Thank you.

15             MR. O'BRIEN: Your Honor, may I briefly be

16   heard?  I apologize.

17             THE COURT:  Certainly.

18             MR. O'BRIEN: Mr. Mann, my client, also has

19   the same religious observance.

20             THE COURT:  I wish everybody was more

21   religious before the case was brought than now.

22             MR. O'BRIEN: Understood, but he's made the

23   request to follow Mr. Levy for just a couple of minutes

24   and then return to court, which should be before his

25   turn comes.
```

1          THE COURT:  As long as the agents have no

2  problem with him being brought back when it's his turn,

3  I will release him for the purposes of his religious

4  service.

5          MR. O'BRIEN: Thank you, your Honor.

6          THE COURT:  Mr. Mann, you can go back and

7  you'll be returned before it's your turn.

8          DEFENDANT MANN:  Thank you.

9          THE COURT:  Here is the cash bond for Mr.

10  Levy's family to post.

11          MR. SOMMER:  Perfect.  I can go take care of

12  that right now.

13          THE COURT:  Okay.

14          MR. SOMMER:  Thank you.

15          THE COURT:  Mr. Landesman, this is a two-

16  million-dollar bond.  It requires you to stay in the

17  Southern District, the Eastern District, New Jersey and

18  the District of Maryland, but you have to give prior

19  notice to Pretrial and the government.

20          Do you understand that?

21          DEFENDANT LANDESMAN:  Understood.

22          THE COURT:  You shall avoid contact with all

23  the codefendants except in the presence of counsel.

24  You shall avoid and not associate with any investors.

25          Do you understand that?

1              DEFENDANT LANDESMAN:  Uh-huh.

2              THE COURT:  I need a yes or no, sir.

3              DEFENDANT LANDESMAN:  Yes.

4              THE COURT:  Thank you.  You shall surrender

5    your passport.  Yours is the one that will be

6    surrendered by tomorrow so I'm going to change it to

7    12/20.  It was written as 12/19.

8              Is that correct, Mr. Landesman?

9              DEFENDANT LANDESMAN:  Yes.

10             THE COURT:  You'll surrender it by tomorrow.

11             DEFENDANT LANDESMAN:  Correct.

12             THE COURT:  You're placed under the express

13   supervision of Pretrial Services.  You're subject to

14   visits at your home or place of work and you must

15   report to Pretrial Services as directed.

16             Do you understand that?

17             DEFENDANT LANDESMAN:  I understand.

18             THE COURT:  Can I please have Ms. Grayson --

19   oh, it's to sign by Wednesday.  And Dr. Royceman to

20   sign by Wednesday.

21             MR. KLEIN:  That's correct.

22             THE COURT:  So nobody is here today?

23             MR. KLEIN:  They're not here today, your

24   Honor.

25             THE COURT:  What about the $100,000 cash to

1    be posted?

2            MR. KLEIN:  We have to post that by

3    Wednesday as well.  To the extent that we're able to do

4    it tomorrow, we'll do it tomorrow but certainly by

5    Wednesday.

6            THE COURT:  And there's no objection to him

7    being released pending the signature of the two

8    suretors?

9            MR. PAES:  No, your Honor.  In light of the

10   health conditions that Mr. Landesman has, we believe he

11   is a little bit less of a flight risk.  Hence we're

12   willing to agree to that modification.

13           THE COURT:  Who is Devora Grayson and Dr.

14   Royceman?

15           DEFENDANT LANDESMAN:  Devora Grayson is my

16   younger sister.  Mark Royceman is a friend and

17   emergency contact in general.

18           THE COURT:  Okay.  You know that they're

19   both aware of what these conditions are?

20           DEFENDANT LANDESMAN:  I haven't had a chance

21   to speak to them personally but I assume they are

22   aware.  If not, they will be made aware.

23           THE COURT:  And you believe that they will

24   come down by Wednesday to sign this bond.

25           MR. KLEIN:  Your Honor, it's my

1   understanding that we could make arrangements, if the

2   Court permits, for them to sign -- Ms. Grayson lives in

3   Silver Springs, Maryland, so we would like to make

4   arrangements for her to sign in a Maryland court.

5           THE COURT:  That's not a problem but the

6   person from New Rochelle can make it here.

7           MR. KLEIN:  Could that person sign in White

8   Plains or would they have to --

9           THE COURT:  It's possible.  My problem with

10  that is, I don't know what they're going to tell these

11  people when they sign the bond.  The concern is always,

12  do they understand.  You're also posting $100,000 at

13  the same time.  Generally, we have the suretor present

14  themselves, unless they're out of state.  People

15  regularly come from out in the far reaches of Long

16  Island to this court, even though there's an Islip

17  courthouse.

18          MR. KLEIN:  I understand, your Honor.  I

19  believe Dr. Royceman works in Connecticut and he lives

20  in Westchester.  I will communicate -- let me check

21  with him, if I may.

22          THE COURT:  Mr. Paes?

23          MR. PAES:  Your Honor, we think he should be

24  able to come here.  I think we had talked about the

25  option of doing it.  But in light of the fact that we

1  have one defendant, I don't think it's a huge

2  inconvenience.

3           THE COURT:  But he is a doctor and this is a

4  holiday week.  He may not have notice.  I don't want to

5  set this up to fail.

6           MR. PAES:  Correct.

7           THE COURT:  I certainly want the money to be

8  posted and I certainly want to know that he understands

9  the obligations.  But if you don't have an objection,

10 I'm not going to require him to come here.  It's just

11 this is unusual.  You're letting somebody out on a two-

12 million-dollar bond without anybody signing, and we

13 don't have a passport.

14           MR. PAES:  I understand, your Honor, and I

15 think we made this exception in light of the ailments

16 that Mr. Landesman has at this point in time.  We had

17 talked about obviously the doctor showing up in

18 Brooklyn to sign it.  They've given us the same

19 explanation and we figured if he can go tomorrow to

20 White Plains and sign it, that that would be acceptable

21 but, obviously, we defer to the Court.  If the Court

22 feels --

23           THE COURT:  I'm not going to object to him

24 going tomorrow.  I want somebody's signature on the

25 bond other than Mr. Landesman.

1          MR. KLEIN:  I'm sorry, is your Honor --

2          THE COURT:  The $100,000 was supposed to be

3   posted by Wednesday, the signatures are supposed to be

4   by Wednesday.

5          MR. KLEIN:  Right.

6          THE COURT:  And you are also going to get

7   the passport but that's by tomorrow.

8          MR. KLEIN:  Understood.

9          THE COURT:  Okay.  So I will leave it to you

10  to make arrangements with Ms. Yuen, who would have to

11  fax this bond to the proper courthouse.  Once you speak

12  to Dr. Royceman, we know that Ms. Grayson isn't going

13  to come here from Maryland.

14         MR. KLEIN:  Right.

15         THE COURT:  But if Dr. Royceman is going to

16  come here, then we don't need to fax it anywhere.

17         MR. KLEIN:  Understood.

18         THE COURT:  If he's not, we have to make

19  arrangements with whatever court he's going to go to,

20  whether that be in White Plains -- I would say if he's

21  going to the Manhattan court, he can drive across the

22  bridge.

23         MR. KLEIN:  Right.

24         THE COURT:  So it's only if he needs to have

25  that as an accommodation.

```
 1              MR. KLEIN:  Understood.

 2              THE COURT:  And the $100,000 must be posted

 3     by Wednesday.

 4              Do you understand that?

 5              MR. KLEIN:  We do.  Our understanding, your

 6     Honor, is that we will either post cash or provide

 7     security in the form of an account with the cash in the

 8     account.

 9              THE COURT:  And that's been approved by the

10     government?

11              MR. PAES:  Yes, your Honor, it has.

12              MS. COOLEY:  We wrote on the bond, your

13     Honor, we will approve the account if the account is

14     acceptable to us.  So it's either cash or an account

15     that we deem acceptable.  So we will have that

16     conversation with counsel.

17              THE COURT:  It says "or the posting of an

18     account acceptable to the government."  In any event,

19     it must be posted by 12/21, is that correct, Ms.

20     Cooley?

21              MS. COOLEY:  Yes, your Honor.

22              THE COURT:  Thank you.

23              You understand that, Mr. Landesman?

24              DEFENDANT LANDESMAN:  I do.

25              THE COURT:  Very good.  Mr. Landesman, I am
```

```
1    going to ask, is this your signature on the bond?
2              THE CLERK:  Is that your signature, bottom
3    right?
4              DEFENDANT LANDESMAN:  It is.
5              THE CLERK:  Thank you.
6              THE COURT:  Then I'm going to wait and give
7    you your bail warnings when I give it to everybody
8    else.  Everybody has to see Pretrial Services today, so
9    everybody understands that as well.
10             Now we're moving on to Mr. Sanfilippo.  Mr.
11   Sanfilippo, it's a two-million-dollar bond.  You must
12   remain in the Southern and Eastern Districts of New
13   York and the District of New Jersey.  You shall avoid
14   all contact and not associate with any codefendant
15   except in the presence of counsel.  You shall not
16   associate with or contact any investors.  You'll
17   surrender your passport.  That's being done today.
18             Is that correct, agents?
19             MR. O'BRIEN:  He doesn't have a passport.
20             MS. COOLEY:  He doesn't have one, actually,
21   your Honor.
22             THE COURT:  He's the one that doesn't.
23             MR. O'BRIEN:  Yes.
24             THE COURT:  So then I'm going to cross that
25   out.  You shall not apply for a passport and you're
```

1  placed under the express supervision of Pretrial

2  Services.  You're subject to random visits by Pretrial

3  Services and you must report to that agency as

4  directed.

5          Do you understand all of that?

6          DEFENDANT SANFILIPPO:  I understand, your

7  Honor.

8          THE COURT:  It is a two-million-dollar bond

9  that is going to be secured by two different

10  properties, one that is at Fairview Court in Freehold,

11  New Jersey, that you own, and the other at 6664

12  Sedgewick Place, also owned by you, is that correct?

13          DEFENDANT SANFILIPPO:  That's correct, your

14  Honor.  The first property is 3 Fawnview Court.

15          THE COURT:  Thank you.  I would not be able

16  to read that.  F-a-w-n-v-i-e-w?

17          DEFENDANT SANFILIPPO:  That's correct, your

18  Honor.

19          THE COURT:  And you're the sole owner?

20          DEFENDANT SANFILIPPO:  Yes, along with my

21  wife.

22          THE COURT:  So you're not the sole owner.

23  Ms. Palmieri is your wife?

24          DEFENDANT SANFILIPPO:  No, Mrs. Maria

25  Sanfilippo.

```
 1              THE COURT:  So we need her as a suretor,

 2    government.

 3              MS. COOLEY:  Your Honor, obviously, we have

 4    the same concern and we discussed suretors with

 5    counsel.  I think that no suretor could come to court

 6    today, in part because of substantial child care

 7    concerns today.  I think that we would ask that she

 8    also be required to sign by Wednesday, if that's

 9    acceptable.

10              MR. O'BRIEN:  Your Honor, along those lines,

11    could I just make one small request?  Joe had put his

12    mother down as the cosigner.

13              THE COURT:  Is that Carolyn Palmieri?

14              MR. O'BRIEN:  Yes, your Honor.  But it makes

15    more sense, especially in light of what was just said,

16    to have his wife Maria --

17              THE COURT:  It's a two-million-dollar bond.

18    I don't know how much thee properties are worth but

19    having one suretor for a two-million-dollar bond?  His

20    wife has two million dollars?

21              MR. O'BRIEN:  If it's a matter of assets,

22    your Honor, this is a modest family.  The mother

23    doesn't have that kind of money, either.

24              THE COURT:  I wasn't the one that put her

25    name down.  I have no idea what they have.
```

1          MR. O'BRIEN:  The only reason we tried to

2    spare the wife is because of the childcare concerns.

3    But it turns out that the mother is going to be in

4    Memorial Sloane Kettering tomorrow and it makes a lot

5    more sense to have -- if the wife is signing the

6    surety, that she come in and cosign the bond as well.

7    That's what we're proposing.

8          THE COURT:  The wife has to sign or else the

9    properties are not worth anything because she's a co-

10   owner.

11         MR. O'BRIEN:  Fine.

12         THE COURT:  So there's no question the wife

13   has to sign.  I'm just questioning what the government

14   is doing here with a two-million-dollar bond for

15   somebody who he's saying they're a modest family and

16   they don't have assets.

17         MS. COOLEY:  Your Honor, it was represented

18   to us that the two properties combined are worth

19   several hundred thousand dollars.

20         MR. O'BRIEN:  Your Honor, they have over

21   seven hundred thousand dollars in equity.

22         THE COURT:  I wasn't the one that listed the

23   mother.  Let's be clear.  I was presented with a bond.

24   I have no idea who Carolyn Palmieri is.

25         MR. O'BRIEN:  Understood.

```
1              THE COURT:  So that you listed the mother --
2   I don't know what her schedule is, I don't know what
3   her problems in the world are.  That was how it was
4   presented to me, counsel, so it must have been
5   discussed with the government.
6              MR. O'BRIEN:  Understood, your Honor, and it
7   was.  And the request was it came down to us was to us
8   was to find a close family member who is responsible
9   and owns something to cosign on the bond.
10             THE COURT:  So does the mother own
11  something?
12             MR. O'BRIEN:  She owns the property we're
13  discussing.
14             DEFENDANT SANFILIPPO:  No, she doesn't.
15             THE COURT:  No, the mother does not own the
16  property we're discussing, that's the wife.
17             MR. O'BRIEN:  Does she own her own home?
18             DEFENDANT SANFILIPPO:  She owns a percentage
19  of a home in Brooklyn.
20             THE COURT:  What percentage because without
21  the other person signing the bond who owns the other
22  percentage, we can't get at the property.
23             DEFENDANT SANFILIPPO:  Over two-third, your
24  Honor, of the home.
25             THE COURT:  Excuse me?
```

1      DEFENDANT SANFILIPPO:  Over two-thirds of

2  the home.

3      THE COURT:  No, but what I'm saying, Mr.

4  Sanfilippo, the way that the property works is that

5  everybody who owns the property has to sign the bond to

6  make that potential for the government to seize.  If

7  the person who is the object of the bond doesn't report

8  to court, the government is going to go after the

9  people who sign the bond to satisfy the judgment.  If

10  your mother owns two-thirds of a property, the

11  government can't take her two-thirds without having the

12  person who owns the other third.

13      DEFENDANT SANFILIPPO:  I understand, your

14  Honor.

15      THE COURT:  I don't know what the government

16  was thinking when they were reviewing what and who was

17  going to sign the bonds.

18      MS. COOLEY:  Your Honor, we did express to

19  counsel that we -- as conditions for the bond, we would

20  need two financially responsible suretors with

21  substantial income or assets.  Counsel listed the

22  individuals who are currently listed.

23      THE COURT:  There's only one individual

24  listed; that's Carolyn Palmieri.  They listed the

25  properties in Freehold, New Jersey and Sedgewick Place,

1 | but if they're owned outright by Mr. Sanfilippo, that's

2 | fine.  But if they're owned jointly with his wife, we

3 | need his wife to sign.

4 |         MR. O'BRIEN:  She will sing.

5 |         THE COURT:  Right, but the mother now you're

6 | saying is a problem because she's got an appointment at

7 | Sloane Kettering, which I'm sorry to hear that but we

8 | need two people on this bond.

9 |         MR. O'BRIEN:  Understood.  We'll get them

10 | both in, your Honor.

11 |         DEFENDANT SANFILIPPO:  Your Honor, we'll

12 | find another person by Wednesday if it's not my mother,

13 | if you have concerns --

14 |         THE COURT:  It's not my concern.  Your

15 | counsel voiced a concern that your mother is getting

16 | treatment at Sloane Kettering.  Then I was asking what

17 | your assets were and counsel said that your family is a

18 | family of modest means.  I am saying that the bond

19 | should be signed by people who are financially stable

20 | suretors, where if the two million dollars is to have

21 | any meaning, the government could collect on the two-

22 | million-dollar bond.  If your mother is a retiree and

23 | the only thing that she has is the property but she

24 | owns it jointly with other people, that's not going to

25 | be used to satisfy the bond.

```
 1                    DEFENDANT SANFILIPPO:  Understood, your

 2     Honor.

 3                    THE COURT:  So what are we doing here?

 4                    MS. COOLEY:  Your Honor, counsel also had

 5     said that the defendant had one or more cousins who did

 6     meet that standard of being financially stable and

 7     responsible.

 8                    THE COURT:  So is what you want m, e to do

 9     cross out Carolyn Palmieri, who is your mom --

10                    DEFENDANT SANFILIPPO:  Yes.

11                    THE COURT:  Cross her out, list your wife

12     because in order for you to list these properties, your

13     wife must sign the bond, even if she has childcare

14     issues.  You'll get one other financially stable

15     suretor to sign the bond by Wednesday.  Is that what

16     you want me to put on this bond?

17                    MR. O'BRIEN:  We can do that, your Honor.

18     If the government is amenable to it, that's what we

19     should do.

20                    MS. COOLEY:  Yes, your Honor, we are.

21                    THE COURT:  So you want me to cross your mom

22     out.

23                    DEFENDANT SANFILIPPO:  Yes, your Honor.

24                    THE COURT:  Her address was the 638 64$^{th}$

25     Street address?
```

1          DEFENDANT SANFILIPPO:  Yes, your Honor.

2          THE COURT:  So cross that out as well.

3          DEFENDANT SANFILIPPO:  Yes.

4          THE COURT:  Mr. Sanfilippo, your wife's name

5    is?

6          DEFENDANT SANFILIPPO:  Maria, your Honor.

7          THE COURT:  With Sanfilippo as her last

8    name, sir?

9          DEFENDANT SANFILIPPO:  That's correct.

10          THE COURT:  Then I'm going to write under

11    other conditions, one additionally financial stable

12    suretor to sign.  That's going to be by Wednesday,

13    which is 12/21.

14          DEFENDANT SANFILIPPO:  Yes.

15          THE COURT:  His wife is going to sign by

16    Wednesday, 12/21, as well.

17          MR. O'BRIEN:  Yes, your Honor.

18          THE COURT:  This does not have any cash

19    because you're going to get the confession of judgment

20    on the two properties, one in New Jersey and one at

21    Sedgewick Place, and he can post those confessions of

22    judgment by 12/28/16, is that correct?

23          MS. COOLEY:  Yes, your Honor.

24          THE COURT:  Do you understand that, Mr.

25    Sanfilippo?

```
1                    DEFENDANT SANFILIPPO:  I do, your Honor.

2                    THE COURT:  So in other words, the

3     government will have the paperwork for the properties,

4     if there is any -- if you fall down on your obligation

5     to appear, the government will be able to use this as a

6     judgment against the properties and we'll have the

7     paperwork on the properties.

8                    Do you understand that?

9                    DEFENDANT SANFILIPPO:  I do, your Honor.

10                   THE COURT:  Can I have you pass this

11    forward?

12                   MR. O'BRIEN:  Your Honor, can I make one

13    small geographic request, which I just learned about

14    and which the government does not oppose?  That Mr.

15    Sanfilippo be allowed to attend a family New Year's

16    Eve/New Year's event in Pennsylvania for two days only.

17

18                   THE COURT:  Is there any objection to that?

19                   MS. COOLEY:  No, your Honor.

20                   THE COURT:  Do you want that on the bond,

21    Ms. Adessa (ph)?

22                   MS. ADESSA:  Yes, your Honor.

23                   THE COURT:  You want me to say permitted to

24    go to a party in New Jersey for New Year's?

25                   MS. ADESSA:  Yes.
```

1          THE COURT:  Okay.

2          MS. COOLEY:  Pennsylvania.

3          DEFENDANT SANFILIPPO:  Pennsylvania.

4          THE COURT:  Pennsylvania, sorry.

5          MR. O'BRIEN:  Thank you.

6          THE COURT:  But you'll tell Pretrial

7   Services where that is.

8          DEFENDANT SANFILIPPO:  Yes, your Honor.

9          THE COURT:  I'm going to write family

10   gathering because it sounds more sedate.  When are you

11   going?

12          DEFENDANT SANFILIPPO:  We'll be leaving on

13   December 30th, your Honor, and returning January 1st.

14          THE COURT:  12/20 through 1/1/17?

15          DEFENDANT SANFILIPPO:  Yes, your Honor.

16          MR. O'BRIEN:  Yes.

17          THE COURT:  Now can I ask you to show it to

18   him?  Thank you.

19          THE CLERK:  Can you sign the bond for Mr.

20   Levy and Mr. Nordlicht?  I think one of the spouses is

21   waiting or something.

22          THE COURT:  They're going to have to wait

23   because I have to give them bail warning and they still

24   have to go to Pretrial Services.

25          THE CLERK:  Okay, I see.

```
 1                    THE COURT:  So they're just going to have to
 2      wait.
 3                    THE CLERK:  Is this your signature on the
 4      bond?
 5                    DEFENDANT SANFILIPPO:  Yes, it is.
 6                    THE CLERK:  Thank you very much.
 7                    THE COURT:  Next up -- is Mr. Levy back?
 8                    MR. SOMMER:  Mr. Levy is still in there but
 9      there is one minor change to the language on his that
10      the government has consented to.
11                    THE COURT:  Yes.
12                    MR. SOMMER:  That's on the no contact with
13      investors other than at the direction --
14                    THE COURT:  Direction of any liquidator,
15      trustee or monitor.
16                    MR. SOMMER:  Adding the words "other than
17      family members" because there are some family member
18      investors.
19                    THE COURT:  Okay.  So it says codefendants
20      except presence of counsel, investors other than at the
21      direction of any liquidator, trustee or monitor, except
22      for family members?
23                    MR. SOMMER:  That's fine.
24                    MR. PAES:  That is correct, your Honor.
25                    MR. SOMMER:  Thank you, Judge.
```

```
 1                THE COURT:  Not the best construction, I
 2    will tell you.  There are two "excepts" in there.
 3                MR. SOMMER:  Piecemeal grammar.
 4                THE COURT:  Now do we have Mr. Levy back or
 5    no?
 6                MR. SOMMER:  I can ask for him to come back.
 7                THE COURT:  Can you please ask him to come
 8    back.
 9                UNIDENTIFIED SPEAKER:  Your Honor, they just
10    started whatever ritual --
11                THE COURT:  It was represented to me that
12    they needed a minute.
13                MR. SOMMER:  Two minutes, your Honor.
14    That's what we were told.
15                UNIDENTIFIED SPEAKER:  Your Honor, I'm out
16    here on Mr. Nordlicht's behalf.  I'm just filling in
17    for Mr. Brown.
18                THE COURT:  That doesn't help me.
19                MR. SOMMER:  Mr. Levy is coming back in,
20    your Honor.
21                THE COURT:  Thank you.  But I appreciate it.
22    Mr. Mann.  I keep saying Levy but I mean Mr. Mann.
23                MR. SOMMER:  You don't want to Mr. Levy?
24                THE COURT:  I'm going to do the bail
25    warnings for everybody at the same time but I need Mr.
```

1    Mann back because we haven't done -- I'm sorry.

2            MR. SOMMER:  So Mr. Levy should go back

3    again?

4            THE COURT:  I really would like everybody to

5    stay put but is he done?

6            MR. SOMMER:  He'll stay.  I think we jut got

7    the Mann and Levy mixed up but Mr. Levy will stay.

8            THE COURT:  I got the Mann and Levy.  Can we

9    have Mann out, please.

10           UNIDENTIFIED SPEAKER:  Your Honor, I believe

11   the other defendants are still praying.  Do you want

12   them out now?

13           THE COURT:  Pray early, people.

14           Mr. Klugman, I'm sorry, you're going to have

15   to indulge me.

16           MR. KLUGMAN:  It's fine, your Honor.

17           THE COURT:  I'm going to give everybody else

18   the bail warnings and then I'm going to have you make

19   your application --

20           MR. KLUGMAN:  That's perfectly fine.

21           THE COURT:  -- once I get rid of everybody

22   so that they can start going to Pretrial.  Thank you

23   very much.

24           Mr. Mann.

25           DEFENDANT MANN:  I'm sorry, your Honor.

```
 1              THE COURT:  It's quite okay.  This is an
 2    order setting the conditions of your release on bond.
 3    It's a one-million-dollar promise that you will come
 4    back to court whenever you're directed to do so.  It
 5    also requires you to stay in the Southern and Eastern
 6    Districts of New York and that you will not contact or
 7    associate with any codefendant, except in the presence
 8    of counsel, and you will not contact and associate with
 9    any investor.
10              Do you understand that, sir?
11              DEFENDANT MANN:  Yes, your Honor.
12              THE COURT:  And that you'll surrender your
13    passport.
14              Does the agent have the passport for Mr.
15    Mann?
16              MS. COOLEY:  Your Honor, I have it,
17    actually, and we can turn it over to Pretrial.
18              THE COURT:  Thank you, Ms. Cooley.
19              I'm noting that your passport has been
20    surrendered and you will be given a receipt.  You are
21    placed under the express supervision of Pretrial
22    Services.  You're subject to random visits by Pretrial
23    Services at your home or place of work and you must
24    report to Pretrial Services as directed.  There's going
25    to be a premises that's owned by Joe and Daniella Mann
```

1    at 1327 East 4th Street in Brooklyn, New York, where

2    there's going to be a confession of judgment filed on

3    the property by 12/28.  I believe that we have somebody

4    in court today who signed this.  It says Elman (ph)

5    Serena Nina.  I don't know what that is.

6              MR. O'BRIEN:  We have them in court today,

7    your Honor.

8              THE COURT:  So both Joe and Daniella Mann

9    are here?

10             MR. O'BRIEN:  I believe so.

11             THE COURT:  Are they the only signatures on

12   this bond, Ms. Cooley?

13             MS. COOLEY:  Your Honor, I believe that

14   includes Mr. Mann's mother, and I believe his father

15   was also present.  We were willing to have his wife and

16   one of his parents sign.

17             THE COURT:  I don't understand.  Who I Joe

18   and Daniella?

19             MR. JOE MANN:  I'm Joe, this is my wife,

20   Daniella.

21             THE COURT:  Who else is signing the bond?

22             UNIDENTIFIED SPEAKER:  I'm signing, Elman

23   Serena Nina.

24             THE COURT:  Can you step forward, the people

25   who are going to sign?  That's good, thank you.  I'll

1    ask my deputy to swear you in?

2              (Suretors are sworn.)

3              THE CLERK:  State your name for the record.

4              MS. WEITZMAN:  Daniella Weitzman.

5              THE CLERK:  State your name.

6              MS. NINA:  Elman Serena Nina.

7              THE CLERK:  Thank you.

8              THE COURT:  Ms. Serena and Ms. Weitzman, you

9    understand that Mr. Mann has been charged with a

10   serious federal crime and that in order for him to be

11   released pending the trial on these charges, he has

12   asked you to come down to sign this bond.  This is a

13   one-million-dollar bond and it will be secured by the

14   property where I believe you live with your husband,

15   Ms. Weitzman.  How long have you bee married?

16             MS. WEITZMAN:  Two years.

17             THE COURT:  What do you do for a living,

18   ma'am?

19             MS. WEITZMAN:  I work a couple of hours a

20   week.

21             THE COURT:  How long ago did you buy the

22   property?

23             MS. WEITZMAN:  About a year ago.

24             THE COURT:  How much did you buy the

25   property for?

1              MS. WEITZMAN:  I'm not sure.  My husband

2    does the finances.

3              THE COURT:  Ms. Serena, what do you do for a

4    living?

5              MS. NINA:  I'm working at an airline and I

6    can guarantee him.  I have a 401(k) and I can guarantee

7    him.

8              THE COURT:  Again, I appreciate that you're

9    his mother.  You would do anything you had to do.  But

10   I'm just trying to figure out -- it's a one-million-

11   dollar bond.

12             MS. NINA:  I understand.

13             THE COURT:  So even if you have a very nice

14   401(k), you're not supposed to touch that until you're

15   a certain age and that's supposed to take care of you

16   into your old age.  So I'm just trying to figure out,

17   do you own your property?

18             MS. NINA:  No.

19             THE COURT:  Ms. Weitzman and Ms. Serena, you

20   understand that this obligation is a big obligation and

21   if for any reason Mr. Mann does not come back to court

22   when he's directed to do so, you will both be on the

23   hook to the United States government for the full

24   amount of the bond.  It's a one-million-dollar promise.

25             Do you understand that, Ms. Weitzman?

```
 1                    MS. WEITZMAN:  Yes.

 2                    THE COURT:  Do you understand that, Ms.

 3     Serena.

 4                    MS. NINA:  I understand that.

 5                    THE COURT:  The government finds these two

 6     suretors to be sufficient?

 7                    MS. COOLEY:  Yes, your Honor.

 8                    THE COURT:  Ms. Weitzman, I didn't put your

 9     first name but if you could please put your first name

10     and if you could put your address and if you could both

11     sign.  Thank you.

12                    Can you just affirm, Mr. Mann, that is your

13     signature on the bond?

14                    DEFENDANT MANN:  Yes, your Honor.

15                    THE COURT:  Thank you very much.

16                    I have taken the signatures of the suretors

17     for Mr. Mann, for Mr. Levy and for Mr. Nordlicht.  I am

18     directing that the suretors for Mr. Landesman and for

19     Mr. Sanfilippo must still come to the Court, which was

20     discussed on the record.

21                    MR. KLEIN:  Your Honor, my understanding is

22     that the suretors for Mr. Landesman -- if they're

23     unable to come here --

24                    THE COURT:  If you make the arrangement,

25     you'll make the arrangement for them.  They're still
```

1    going to a court to sign on to the bond.

2              MR. KLEIN:  Correct.

3              THE COURT:  I'm required by law to give you

4    all the following bail warnings:  If for any reason you

5    do not come back to court when you are directed to do

6    so, there will be agents dispatched.  They will find

7    you.  They will place you under arrest.  The likelihood

8    is you will not be released again pending your trial on

9    these charges.

10             In addition, there's a separate federal

11   offense called bail jumping.  If you don't come back to

12   court when you're directed to do so and you've signed

13   on to a bond saying you will return to court, if you

14   don't come back to court, you can be prosecuted for the

15   separate federal offense called bail jumping, which is

16   punishable by up to ten years in jail, even if you are

17   never convicted of the crime for which you stand

18   accused today.

19             Last but not least, if you commit any other

20   crime while you are out on bail bond, they can enhance

21   the penalty for whatever the crime is that you commit.

22   If for instance in New York, you commit a felony while

23   out on bail, they can add up to ten years to whatever

24   the crime offense was that you committed because you

25   committed that criminal offense while out on bail bond.

```
1              Those are the bail warnings but whoever else

2    signed this bond, you will be financially ruining their

3    lives.  There are consequences of signing bonds even

4    though it may just be an inconvenience today to come

5    sign a bond.  But for instance, in Mr. Sanfilippo's

6    case, they could take your properties away from you.

7    In Mr. Landesman's case, they're going to be posting

8    $100,000 but that will still leave 1.9 million that

9    they could take out of your sister and your friend the

10   doctor's accounts.

11             Mr. Levy, your father and your brother

12   signed the bond.  Even though $200,000 was being

13   deposited, they can come after them for the 1.8 million

14   that remains on the bond obligation.

15             I'm not going through each and every one

16   your obligations but I need to hear ono the record --

17   Mr. Nordlicht, do you understand those bail warnings?

18             DEFENDANT NORDLICHT:  I do, thank you.

19             THE COURT:  Will you come back to court

20   whenever you're directed to do so?

21             DEFENDANT NORDLICHT:  Yes.

22             THE COURT:  Will you abide by all the other

23   conditions that have been set forth on the record with

24   regard to your bail?

25             DEFENDANT NORDLICHT:  Yes.
```

 1            THE COURT:  Then I have signed your bond and

 2  you must go to Pretrial to make arrangements about

 3  reporting with them.

 4            Mr. Levy, do you understand the obligations

 5  that I've set forth on the record?

 6            DEFENDANT LEVY:  Yes, your Honor.

 7            THE COURT:  Do you understand the bail

 8  warnings that I have given you?

 9            DEFENDANT LEVY:  Yes, your Honor.

10            THE COURT:  You understand that if you do

11  not come back to court, that there are consequences

12  which may include prosecution for a separate crime.

13            Do you understand that?

14            DEFENDANT LEVY:  Yes, your Honor.

15            THE COURT:  I'm signing that you be released

16  on these conditions and I'm directing that you go meet

17  with Pretrial.

18            MR. SOMMER:  Thank you, your Honor.

19            THE COURT:  As far as Mr. Landesman, we've

20  gone over the conditions on the record.  Do you

21  understand the bail warnings, Mr. Landesman?

22            DEFENDANT LANDESMAN:  I do.

23            THE COURT:  Do you agree to come back to

24  court whenever you're directed to do so?

25            DEFENDANT LANDESMAN:  Absolutely.

1          THE COURT:  Then I'm signing on to this and

2    directing that you can go meet with Pretrial.

3          Mr. Sanfilippo, do you understand the bail

4    warnings?

5          DEFENDANT SANFILIPPO:  Yes, your Honor.

6          THE COURT:  Do you agree to abide by all the

7    conditions in the bond?

8          DEFENDANT SANFILIPPO:  I do, your Honor.

9          THE COURT:  And come back to court whenever

10   you're directed to do so.

11         DEFENDANT SANFILIPPO:  Yes.

12         THE COURT:  Then I'm signing on to this

13   order setting the conditions of your release and you

14   may go meet with Pretrial.

15         Mr. Mann, do you understand the conditions

16   that have been set forth on the record?

17         DEFENDANT MANN:  Yes, your Honor.

18         THE COURT:  Do you agree to come back

19   whenever you're directed to do so?

20         DEFENDANT MANN:  Yes, your Honor.

21         THE COURT:  I am singing that you should be

22   released and you may go meet with Pretrial.

23         DEFENDANT MANN:  Thank you.

24         THE COURT:  Can everybody please leave the

25   courtroom so that I can deal with the remaining

1    defendant Mr. Small's application?  Thank you.

2              I understand that you haven't been able to

3    reach an agreement regarding Mr. Small's release on

4    bond.

5              MR. KLUGMAN:  We have not, your Honor.

6              THE COURT:  So what have you proposed and

7    where are we going with this?

8              MR. KLUGMAN:  In my view, we should -- my

9    proposal is similar to what I think Pretrial

10   recommended, and there are some special circumstances

11   that are not even in the report which I do want to

12   reference.  But what I proposed is a $250,000 bond.  We

13   have two suretors who are willing to sign.  Neither of

14   them live in the New York area.  He has two brothers.

15   They're both referenced in the report, one of whom

16   lives in Atlanta, the other of whom lives in Los

17   Angeles.

18             THE COURT:  If I could just say, his brother

19   that's in Atlanta -- and I know nothing about him

20   except what's in the Pretrial Services report.  He's a

21   substitute teacher.  He doesn't have a steady income

22   but he owns a $220,000 condo?

23             MR. KLUGMAN:  That's correct.

24             THE COURT:  How can that be?

25             MR. KLUGMAN:  Because it's an inheritance.

```
 1   Mr. Small's parents unfortunately passed, both of them
 2   within the last year.
 3              THE COURT:  I'm sorry.
 4              MR. KLUGMAN:  That went to his brother Josh.
 5              THE COURT:  So he owns it outright.
 6              MR. KLUGMAN:  Outright, no mortgage.
 7              THE COURT:  Okay.  That makes a little more
 8   sense.  Go ahead.
 9              MR. KLUGMAN:  We don't believe that that
10   condo should -- there should be any property that needs
11   to be posted here, which is something that was not
12   asked for in the Pretrial Services report.
13              THE COURT:  I'm not asking for it.
14              MR. KLUGMAN:  I understand, your Honor.
15              THE COURT:  I just couldn't understand how
16   somebody could own a $220,000 condo when they're a
17   substitute teacher that doesn't work steadily.
18              MR. KLUGMAN:  My understanding of the
19   dispute, and I'll get to the reasons why I think that
20   what I've offered is appropriate under these
21   circumstances, is about the amount of the bond.  The
22   government may also want some property.  But I do think
23   there are some terms that we've all agreed on and
24   they're actually filled in here.
25              In terms of his travel, the Southern
```

1    District and the Eastern District of New York and the

2    District of New Jersey.  In terms of the no contact

3    provision, codefendants except in the presence of

4    counsel, and investors in Platinum Partners.  His

5    passport has been surrendered.  Pretrial Services does

6    have it.

7            MR. PAES:  The agent has it.

8            UNIDENTIFIED SPEAKER:  Pretrial took it.

9            THE COURT:  Pretrial took it?

10           UNIDENTIFIED SPEAKER:  Yes.

11           THE COURT:  Can we get somebody to verify

12   whether or not Pretrial has it because she did come and

13   pick up a couple of passports.  Thank you.

14           Go ahead.

15           MR. KLUGMAN:  I can represent that it was

16   given to the agents today.

17           THE COURT:  Go ahead.

18           MR. KLUGMAN:  Reporting as directed to

19   Pretrial Services.  This is not, as your Honor knows

20   from the indictment, a case of violence.  Really the

21   only issue here is whether or not Mr. Small is a flight

22   risk, and there are a number of reasons why I think

23   that he's not.  Some of them are reflected in the

24   report and some of them are not reflected in the

25   report.

```
1              He has three children.  They all live in the
2   New York area.  He's been in the New York area as a
3   resident since 1993, born in the United States.  The
4   other big factors that's not reflected in the report
5   is, Mr. Small knew that this was coming.  He knew that
6   his arrest was coming for a while.
7              THE COURT:  They all did.
8              MR. KLUGMAN:  We have been in discussion
9   with the government about allowing Mr. Small -- not me
10  personally, my partner, Seth Levine, who is on vacation
11  today.
12             THE COURT:  Aren't you lucky?
13             MR. KLUGMAN:  This is part of the problem.
14  We have been in discussion.  Allow Mr. Small to self-
15  surrender.  We can work out a package in advance.
16  These discussions have been going on for a month.  We
17  have known as of the middle of last week when we asked
18  to appeal the government's decision to bring charges
19  against Mr. Small and our request to appeal was denied.
20  We knew as a matter of certainty as of Wednesday night
21  at 11:10 --
22             THE COURT:  That he was going to be
23  arrested.
24             MR. KLUGMAN:  -- that he was going to be
25  arrested and that it was going to be imminent.  And yet
```

 1    Mr. Small is standing right here next to me.  He was in

 2    his house and the agents were able to arrest him at

 3    home this morning.

 4              THE COURT:  So let's come up with a bail

 5    amount that's reasonable and security for the

 6    government.  I don't know what their problem is with

 7    what has been proposed.  It is a substantially smaller

 8    amount than the other people have been released on.  I

 9    will note that for the record.

10              MR. PAES:  May I address that a bit, your

11    Honor.

12              THE COURT:  Yes.

13              MR. PAES:  I think we had proposed a

14    million-dollar bond for Mr. Small with the posting of

15    the property -- with two suretors and the posting of

16    the property that his brother in Atlanta owns, the

17    condo.  We thought that that was as pretty reasonable

18    proposal, especially in light of what the Court has

19    already seen with respect to some of the other

20    defendants.

21              THE COURT:  Can I just ask you, to be clear,

22    the recommendation from Pretrial doesn't include that

23    there has to be a posting of property.  That's one.

24    Two, it may be that his brothers would agree to sign

25    but neither of them would want to put their property on

1 the line for whatever reason.  Whether or not the

2 brother in Atlanta needs it to refinance to get money

3 to live on -- I can't tell you what the reasons might

4 be.  But Mr. Small, if it's a million-dollar bond with

5 two suretors, would be in line with everybody else.

6 Why would that -- I understand that it was proposed

7 that it be a $250,000 bond.

8    But what I would say, Mr. Klugman, quite

9 frankly, if he's not going anywhere, whether it's a

10 million or it's 250 doesn't matter because it's just

11 signing on to a piece of paper.  It only takes effect

12 if he does try to leave and doesn't return and live up

13 to his obligations.

14    MR. KLUGMAN:  I agree with your Honor's

15 statement but it does matter to his brothers.

16 Obviously, it matters to him.  He's here.  We fully

17 expect him to come back to court.  He will pledge to

18 come back to the Court.  The question here really is,

19 what is appropriate under the circumstances?  The fact

20 that others who are more culpable based on the face of

21 the indictment are willing to agree to more amounts of

22 money and have more amounts of money that they are able

23 to put up shouldn't affect whether -- what the bond is

24 for Mr. Small.  Each case, as your Honor knows, should

25 be evaluated on its own merits.

1              What we have here, as your Honor has rightly

2     pointed out, is a recommendation from Pretrial Services

3     that does not require any property.  We think that

4     given the fact that he has known about this, that

5     $250,000 satisfies their request for a substantial

6     bond, which is what they call for in their

7     recommendation.

8              THE COURT:  Mr. Paes?

9              MR. PAES:  Your Honor, I want to address

10    this thing about he's known about it because obviously,

11    all the defendants have known that charges may be

12    coming.  With respect to Mr. Small, until very recently

13    when we notified him, which was last week, that the

14    appeal was denied, the position that his lawyers have

15    taken was that no crime had been even committed over

16    here.  So the fact that he did not flee from say for

17    example the time that the government's presence got

18    known when we executed the search until now means

19    nothing, given the fact that the position they've taken

20    was that he did nothing wrong and no crime had been

21    committed.

22              So if Mr. Klugman is going to argue that he

23    didn't flee and he wants to point out from last week

24    Wednesday until today as the basis for that, maybe I'll

25    grant him that.  But to claim that he's known for

1  months that he was not going to be -- that he was going

2  to be charged is simply not true in light of the

3  discussions we've had with counsel.

4         Secondarily, Mr. Klugman talked about, there

5  are some things that are in the Pretrial Services

6  report and some things that are not.  What's important

7  to note is that what's not is the fact that Mr. Klugman

8  -- upon request of defense counsel, it says that

9  Pretrial Services did not inquire about the defendant's

10 financial resources or expenses.  I think that's

11 important because that's an important fact that's

12 missing in the Pretrial Services report compared to the

13 other defendants, who did speak to them about what

14 their assets were.

15         THE COURT:  Is that because he's a former

16 member of your office and so he's going to tell his

17 clients to say as little as possible to get the bond in

18 place?

19         MR. PAES:  That's fine, but you can't use

20 that, your Honor, in some ways as a means of not

21 disclosing and then yet say in the same manner that now

22 he doesn't have the resources.

23         THE COURT:  I'm prepared to cut through

24 this.  I don't think 250 is sufficient but I would

25 think that if it was a $600,000 bond, that that would

1    be sufficient, signed by the two suretors that he's

2    proposing.  Everybody else has been let go on a

3    million.  I don't think $600,000 is such a deviation.

4    Is there a problem?

5         MR. PAES:  No, your Honor.  The only thing I

6    would say -- I think we're fine with the $600,000 but

7    every other single defendant has posted some

8    collateral, either cash or they have posted property.

9    To say that Mr. Small is somehow not charged in --

10   granted, he's not charged in the main scheme.  He's

11   charged in the fifty-million-dollar scheme and the

12   evidence --

13        THE COURT:  What's his interest in the

14   apartment he lives in?  I understand he's going through

15   a divorce proceeding but does he have an interest in

16   the apartment he lives in?

17        MR. KLUGMAN:  He rents the current

18   apartment.  There obviously is some information on his

19   financial circumstances.  The questions we didn't allow

20   him to answer --

21        THE COURT:  It's probably because of the

22   divorce.

23        MR. KLUGMAN:  -- were the ones relating to

24   his work at Platinum Partners, which is the subject

25   matter of the indictment.  I will just say for the

1   record, we still take the position that Mr. Small has

2   committed no crime.  Obviously, the government has

3   reached a different conclusion but that fact has not

4   changed from when we started these discussions.

5            THE COURT:  That's not what I need you to

6   speak to at this point in time.

7            MR. KLUGMAN:  I understand that but --

8            THE COURT:  Their point is that every single

9   other person who has been released, even if they didn't

10  post it today, are posting something, whether it be

11  cash or the properties, Mr. Sanfilippo, Mr. Levy, Mr.

12  Mann, every single one.  So is there any property that

13  can be posted, if not the guy down in Georgia, somebody

14  else?

15           MR. KLUGMAN:  We do have property that's

16  available to be posted, as reflected in the report.  We

17  think it is entirely inappropriate.  The reference to

18  what other people agreed to in an agreed-upon bail

19  package really should not affect the Court's decision

20  as to what is appropriate for Mr. Small.  Under the

21  circumstances --

22           THE COURT:  I'll tell you the reason why it

23  does is I probably wouldn't have come up with the same

24  packages that the government has consented to.  If I

25  was the one looking at this in the first instance, I

1    probably would not have come up with those bonds.  And

2    that that was agreed to for five out of six, it does

3    inform my judgment as to what the negotiations back and

4    forth have been.  So if you're telling me that there is

5    property that could be posted, if it's going to be by

6    one of the people who are signing, let's not fight.

7    Mr. Small wants to go home.  Let him get to Pretrial.

8    Everything else is worked out.

9            It is less.  You still did better than any

10   of his colleagues did by arguing about this but I'm not

11   in the position that I could really know whether or not

12   his money is liquid and he would be able to get out of

13   here, and maybe the kids that he's fighting about with

14   his wife are such a hardship and pain to him that he

15   just want to flee the jurisdiction.  I don't know.

16           MR. KLUGMAN:  Your Honor, I'll say there's

17   no evidence that that's the case.

18           THE COURT:  I was saying it in a -- I'm not

19   trying to in any way undermine the seriousness of this

20   proceeding but I was saying it sarcastically.  If he's

21   involved in a divorce, then obviously, there are things

22   at issue for him that may not be at issue for the rest

23   of the people who are charged.  But that being said, if

24   he has brothers that are going to sign this and if he's

25   not going to go anywhere anyway, then it wouldn't

1  matter if some collateral was posted.

2          MR. KLUGMAN:  Your Honor, given that the

3  Court at one point was considering $600,000 with no

4  property and we are now offering $220,000 and change

5  worth of property to be posted, I'd ask that the

6  $600,000 be made a little bit lower under the

7  circumstances.

8          MR. PAES:  Your Honor, I think obviously, we

9  would ask for one million dollars.  We are fine with

10  $600,000.  I feel like they're arguing back and forth

11  over something that seems unnecessary but nonetheless

12  an important aspect to place some level of restrictions

13  on Mr. Small so that he feels some form of risk.

14          THE COURT:  I'm sure that he feels it.  I'll

15  stick with my $600,000 and have somebody with property

16  post the property as collateral.  All the other

17  conditions have been agreed upon so let's get it

18  written up and let's get it signed.  Nobody is here

19  today so I would imagine you two days to get people to

20  sign, and I imagine that you need the week -- I don't

21  know how you post property in Atlanta but you'll figure

22  that out.

23          MR. KLUGMAN:  Your Honor, can I just confer

24  with the government about the timing, to see if we can

25  reach an agreement?

1          THE COURT:  Certainly.

2          (Mr. Klugman is conferring with the

3   government.)

4          MR. KLUGMAN:  Your Honor, the brother in

5   Atlanta will be able to sign within the next two days.

6   Given the holiday week and the brother in Los Angeles

7   has a busy medical practice, we would ask for the end

8   of the Christmas week, which is the end of next week.

9   I think the government would like the end of this week.

10  We would also ask for the end of next week --

11         THE COURT:  I'm sorry, I'm so confused.

12         MR. KLUGMAN:  Sure.

13         THE COURT:  I thought Christmas was the end

14  of this week because I'm out on Sunday, so I thought

15  that ends Sunday is the end of the Christmas week.

16         MR. KLUGMAN:  So basically, a week from

17  Friday is what we were -- Hanukkah and Christmas are

18  next week.  If the Court insists on Friday for --

19         THE COURT:  This is how I'm going to say it.

20  By next Wednesday, the brother in L.A. has to sign.  By

21  two days from now, the brother in Atlanta has to sign.

22  I think it's the 28th, is it, the Wednesday of next

23  week?

24         MR. KLUGMAN:  That's correct.

25         THE COURT:  So by that same date, the

1    confession of judgment on the property.

2              MR. KLUGMAN:  Thank you, your Honor.

3              THE COURT:  Okay?  Is the bond prepared?

4              (The clerk is preparing the bond.)

5              THE COURT:  Mr. Small, you understand that

6    this is a $600,000 bond.  You'll stay in the Eastern

7    and Southern Districts of New York and New Jersey.

8    Your attorney will tell you what counties that means.

9    You cannot leave the jurisdiction as set forth in the

10   order without permission of the Court.

11             Do you understand that?

12             DEFENDANT SMALL:  Yes, I do, your Honor.

13             THE COURT:  You shall not speak to any of

14   the codefendants except in the presence of counsel and

15   you cannot contact or associate with investors in

16   Platinum Partners.

17             Do you understand that?

18             DEFENDANT SMALL:  I do.

19             THE COURT:  Your passport has been

20   surrendered.  That's been confirmed?

21             MR. PAES:  Yes, your Honor.

22             MS. COOLEY:  Yes, your Honor.

23             THE COURT:  And you'll not apply for

24   another, and you're placed under the express

25   supervision of Pretrial Services, subject to random

1    visits by Pretrial Services at your home or place of

2    work, and you must report to Pretrial Services as

3    directed.  You will have the one brother in Georgia to

4    sign this bond by 12/21 and the other brother in

5    California to sign by 12/28.  The premises located at

6    342 Ashford Circle, Dunwoody, Georgia will be posted as

7    a collateral so a confession of judgment will be filed

8    on or before 12/28.

9              Do you understand that?

10             DEFENDANT SMALL:  Yes, I do.

11             THE COURT:  We will fax this to the closest

12   courts to your brother for them to sign but I need to

13   make sure you understand that if for any reason you

14   don't come back to court when you're directed to do so,

15   agents will be dispatched.  You'll be placed under

16   arrest.  You'll be brought back to the courthouse and

17   the likelihood is you will not be released again

18   pending your trial on these charges.

19             Do you understand that?

20             DEFENDANT SMALL:  Yes, I do, your Honor.

21             THE COURT:  If you commit any other crime

22   while you're out on bail, there can be enhanced

23   penalties for whatever that crime is that you commit.

24   In New York, if you commit a felony, they could add ten

25   years on because you committed the crime while out on

1    bail.

2              Do you understand that?

3              DEFENDANT SMALL:  Yes, I do, your Honor.

4              THE COURT:  If you don't come back, in

5    addition to the charges that you face, you could be

6    charged with the separate federal crime of bail

7    jumping.  Bail jumping is punishable by up to ten years

8    in prison, even if you are never convicted of the crime

9    for which you stand accused today.  If you don't come

10   back to court and they have to find you to bring you

11   back, you can be prosecuted and convicted of bail

12   jumping.

13             Do you understand that?

14             DEFENDANT SMALL:  Yes, I do.

15             THE COURT:  Then I'll ask you to sign this

16   if you agree to come back whenever directed to do so

17   and to all the other conditions set forth on the

18   record.

19             MR. KLUGMAN:  I just want to confirm with

20   the Court's clerk that a copy of this will be available

21   in Atlanta by Wednesday.

22             THE CLERK:  Yeah.  Send me the stuff.  I'm

23   going to email or fax them to the person.

24             MR. KLUGMAN:  We'll reach out and if there's

25   an issue, we'll let the government know.

1            THE COURT:  Mr. Small, do you understand

2    you've signed and you must come back whenever directed?

3    Do you understand?

4            DEFENDANT SMALL:  Yes, your Honor.

5            THE COURT:  Then I'm signing that you should

6    be released.  Was there anything else that needed to be

7    addressed with respect to Mr. Small today, Mr. Paes?

8            MR. PAES:  No, your Honor.

9            THE COURT:  Anything further, Mr. Klugman?

10           MR. KLUGMAN:  No, thank you very much, your

11   Honor.  Have a happy holiday.

12           THE COURT:  Happy holiday to everybody.

13   Thank you.  This matter is adjourned.

14            *  *  *  *  *  *  *  *

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    December 21, 2016