UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       *Plaintiff*,<br><br>    v.<br><br>NORDLICHT ET AL,<br><br>       *Defendants*. | Case No. 1:16-cr-00640-BMC |

**NON-PARTY ANDREW KAPLAN'S MEMORANDUM OF LAW SUPPORTING HIS MOTION TO QUASH THE SUBPOENA OF DEFENDANT LEVY**

## **PRELIMINARY STATEMENT**

Andrew Kaplan, a former employee of Platinum Partners, respectfully submits this motion to quash a Rule 17(c) subpoena that counsel for defendant David Levy has served on Mr. Kaplan. Mr. Levy's subpoena seeks "any and all devices used to make the consensual recordings provided to [the Government]," as well as the accompanying passwords needed to access the devices. But Mr. Kaplan already has produced the relevant materials he has identified from these devices to the Government, who we understand in turn, produced those materials to the defendants in this case. There is no legal basis for Mr. Levy to obtain the devices themselves, nor any password associated with them. By seeking access to the entire proverbial filing cabinet rather than specific relevant files, Mr. Levy seeks to impermissibly convert a Rule 17 subpoena into the functional equivalent of a search warrant. *See In re Iriving*, 600 F.2d 1027 (2d Cir. 1979); *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965); *People v. Spykstra*, 234 P.3d 662, 664 (Colo. 2010). We therefore ask this Court to quash the subpoena.

## **BACKGROUND**

Mr. Kaplan, a non-party to this action, is a former Platinum Partners employee. He has an iPhone6 (password protected) and an older iPhone 4 (not password protected) (together "the Devices"), from which he produced materials (recordings, voicemails, and text messages) to the Government. Those materials were, we understand, in turn produced to the defendants in this case by the Government, in productions dated on or about October 5, 2018, (Letter, ECF No. 400), and January 4, 2019 (Letter, ECF No. 477).[1] The Devices, which were used by Mr. Kaplan during different time periods, each contain both information related to Platinum and private (and wholly irrelevant) data, including thousands of personal photographs, hundreds of family videos and personal voicemails.

---

[1] Mr. Kaplan located the second device, which was out of service but had been kept, after a search prompted by the receipt of the Levy Subpoena.

2

They also contain numerous personal files detailing sensitive information concerning among other things Mr. Kaplan's medical records, as well as his children's medical and educational records.

Defendant Levy issued an ex-parte subpoena to Mr. Kaplan on November 21, 2018 ("Levy Subpoena" attached hereto as Exhibit A) seeking production of "[a]ny and all devices used to make the consensual recordings provided to Securities and Exchange Commission or Department of Justice concerning Platinum Partners LLC (including its subsidiaries, agents, employees, or investors)," as well as "[a]ny and all devices used to make consensual recordings concerning Platinum Partners LLC (including its subsidiaries, agents, employees, or investors) that were not provided to [the] Securities Exchange Commission or Department of Justice" and any accompanying passwords needed to access the devices.  The Levy Subpoena was marked as returnable to the offices of Mr. Levy's counsel on December 21, 2018, and signed only by the Clerk of the Court, Douglas C. Palmer.  On or about November 29, 2018, the undersigned counsel for Mr. Kaplan accepted service of the Levy Subpoena.[2]

## APPLICABLE LAW

A subpoena issued pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1).  The Rule provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." *Id*.  The party seeking production under Rule 17(c) "has the burden of showing that production would not be 'unreasonable or oppressive[.]'" *In re Irving*, 600 F.2d at 1027 (citing Fed. R. Crim. P. 17(c)).

It is axiomatic that "Rule 17(c) was not intended to provide an additional means of discovery" to a defendant in a criminal case. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *United States v. Gel Spice Co.*, 601 F. Supp. 1214, 1224 (E.D.N.Y. 1985) ("The purpose of the rule is not to facilitate discovery, but… to obtain and inspect evidentiary material prior to trial.").  Indeed,

---

[2] Subsequently, the parties agreed to discuss and consider whether or not they could come to agreement regarding a protocol that might allow defendant Levy to arrange for an additional limited search. Ultimately, counsel did not reach agreement.

3

"[c]ourts have been careful to point out that Rule 17(c), by contrast, should not be construed as a broad discovery device." *United States v. Vasquez*, 258 F.R.D. 68, 72 (E.D.N.Y. 2009) (citing *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (*quoting United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)).

As such, Rule 17 subpoenas "are held to a strict standard" adopted by the Supreme Court in *United States v. Nixon*, 418 U.S. 683 (1974). The Court established that a party seeking the production of documents pursuant to Rule 17(c) has the burden of demonstrating:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.' *Id.* at 699-700*; see also United States v. Hutchinson*, No. 97–CR–1146, 1998 WL 1029228, at *2 (E.D.N.Y. Dec. 23, 1998).

This four-part test governing the propriety of a subpoena under Rule 17(c) has been construed by the Supreme Court as requiring the party seeking a subpoena to "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *See Nixon*, 418 U.S. at 700; *United States v. Moore*, No. 92 CR 200 (DRH), 1992 WL 266938 (E.D.N.Y. Sept. 29, 1992) (citing *Nixon* in quashing a 17(c) subpoena that requested "all documents, memoranda, notes, reports and other materials" because of its failure to request only individual documents). Under Rule 17(c)(2), courts may quash subpoenas that are "unreasonable or oppressive" or where it is clear that the party seeking production has not met its burden of demonstrating that the threshold requirements for issuance have been met. *See In re Irving*, 600 F.2d at 1034.

The Second Circuit in *In re Horowitz* made clear that subpoenas must request specific documents rather than entire "file cabinet[s]." 482 F.2d 72, 79 (2d Cir. 1973), *cert. denied.* 414 U.S. 867 (1973) (narrowing a subpoena requesting three entire file cabinets to only specific categories of files that could be relevant to the grand jury investigation). This principle has been

4

applied in the modern era to requests for computers and cell phones. *See In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993*, 846 F. Supp. 11, 12 (S.D.N.Y. 1994) (applying *Horowitz's* file cabinet analogy to quash a subpoena requesting a computer hard-drive because of its failure to target specific documents and differentiate between relevant and non-relevant documents); *see also People v. Spykstra*, 234 P.3d 662, 664 (Colo. 2010) (overturning a trial court's decision to permit a forensic technician to examine various computer and cell phone devices because doing so converted the 17(c) subpoena into the functional equivalent of a search warrant).

## ARGUMENT

I. **This Court should quash the Levy Subpoena because it seeks to embark on a "fishing expedition."**

    A.    <u>The Levy Subpoena's demand for the Devices.</u>

The Levy Subpoena's demand for the Devices themselves, and any password associated with them, is a fishing expedition that is not justified under the law or the facts at hand. The Levy Subpoena flatly fails the Nixon analysis. Mr. Kaplan already produced to the Government all files from the Devices that counsel for Mr. Kaplan has determined were related to Platinum, and it is our understanding that the Government has produced all of these materials to the defense. Nor does the Levy Subpoena identify specific files that it seeks, or specific dates for which Mr. Levy might have reason to believe additional recordings could exist. Instead, the Levy Subpoena requests production of the Devices themselves — the entire proverbial filing cabinet. But the law does not entitle him to this. *See In re Horowitz*, 482 F.2d at 79.

Meanwhile, the vast majority of the files on the Devices are private, and wholly irrelevant to the current matter. There is simply no legal justification that entitles Mr. Levy to explore Mr. Kaplan's devices in search of hypothetically responsive materials.

B.     The Levy Subpoena's demand for passwords.

The Levy Subpoena's demand for passwords is similarly baseless. The plain text of Rule 17(c) does not entitle Mr. Levy to any password for the Devices. Rule 17(c)(1) provides that "a subpoena may order the witness to produce any books, papers, documents, data, *or other objects* the subpoena designates" (emphasis added). *See also* Fed. R. Crim. P. 17 Advisory Committee's Notes to 2002 Amendment (noting the word "data" was added because such "information may exist in a *format* not already covered…") (emphasis added). Further, 17(c) instructs courts that the purpose of a 17(c) Subpoena is to allow the parties to inspect *items* before they are to be offered into evidence. *Id.*

Mr. Kaplan's password is not an object that can be inspected or offered into evidence and therefore is not data that exists in any cognizable format contemplated by Rule 17(c)(1). In addition, the password cannot be offered into evidence because it is not relevant. Mr. Kaplan's password has no capacity to make a non-collateral fact more or less probable. *See* Fed. R. Evid. 401. Therefore, Mr. Levy has no legal or factual basis to demand any password for the Devices.

C.     The Defense's proposal for their vendor to search the Devices for hypothetical deleted information.

Mr. Levy's counsel has sought further production related to this subpoena, in order, as we understand it, to determine whether or not any potentially responsive materials might have been deleted. This request is simply too speculative and insufficiently specific to be permitted under Rule 17(c). Defendant Levy seeks possession of (or alternatively permission to have a vendor search) Mr. Kaplan's devices so that he may explore whether the types of files he hopes to find even exist. This is the type of intrusive fishing expedition that has been found improper under Rule 17(c).

Mr. Levy's counsel has proposed a protocol in an attempt to address the privacy and relevance concerns of his request by requesting access to – rather than possession of – the Devices, but this protocol also exceeds what is permitted by Rule 17. Under the proposed protocol, as we understand it,

if deleted material exists on the Devices, any forensic recovery and reassembly of it would then require attorney review for responsiveness. Such a review would unavoidably infringe on Mr. Kaplan's privacy rights, is without sufficient factual support to be justified under 17(c), and converts the subpoena into a search warrant.

Though not binding upon this court, the Supreme Court of Colorado's analysis in rejecting exactly this type of proposal is instructive.[3] In *Spykstra*, the court overturned a modification of pretrial subpoenas ordering the recipient to allow the defendant's forensic expert to travel to their home and search the subpoena recipient's computer because it effectively converted the subpoenas into search warrants, and because there was not a sufficient factual basis for believing the files sought even existed. 234 P.3d. at 664. Both of these considerations apply here. Finally, the logic of *Horowitz* applies. If a 17(c) subpoena does not entitle the requesting party to search a file cabinet, neither can it reasonably be held to justify a search of nearby garbage cans.

## CONCLUSION

For the reasons set forth above, Andrew Kaplan requests this Court to grant its Motion to Quash the Subpoena of Defendant Levy and quash the Levy Subpoena to the extent it seeks the Devices themselves, or any password to the Devices.

Dated: February 19, 2019
     New York, New York                      By: /s/ *Eugene Ingoglia*

                                            Eugene Ingoglia
                                            eugene.ingoglia@allenovery.com

                                            ALLEN & OVERY LLP

---

[3] The subpoenas at issue in *Spykstra* were filed pursuant to Rule 17(c) of the Colorado Rules of Criminal Procedure which is patterned after the federal rule. *Spykstra,* 234 P.3d at 666. In that case, the defendant in a pending child sexual assault case filed overbroad subpoenas on the parents of the victim seeking all computers and all hard drives, including of cell phones, which may have received electronic messages. *Id.* at 664. The trial court ordered modified enforcement of the subpoenas to require the parents to allow the defendant's computer forensic expert to come to their home to perform limited searches on their computers. The Supreme Court of Colorado reversed the trial court's decision and ordered the subpoena quashed as unreasonable and oppressive. *Id.*

8

        1221 Avenue of the Americas
        New York, NY 10020
        Telephone:  (212) 610-6300
        Facsimile:   (212) 610-6399

*Attorney for Andrew Kaplan*