

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022

PHONE 212.999.5800
FAX 212.999.5899

www.wsgr.com

April 27, 2019

<u>VIA CM/ECF</u>

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    <u>United States v. Mark Nordlicht, et al.</u>, No. 1:16-cr-00640-BMC

Dear Judge Cogan:

    Defendants move *in limine* to preclude the government from eliciting improper lay opinion testimony from Arthur Garza regarding the valuation of oil and gas properties. We respectfully submit that the government's proffered opinion testimony must be precluded in order to afford the defendants a fair trial.

**I.    Background**

    As the Court is aware, the valuation of Platinum's investments – in particular its investments in oil and gas exploration companies – is a central issue in this case. Indeed, the Indictment alleges that the defendants engaged in a scheme to defraud investors through material misrepresentations and omissions regarding, among other things, the overvaluation of PPVA's Level 3 assets – specifically, Black Elk, Golden Gate, and Northstar. Indictment at ¶¶ 42, 47-52. It was based on the overvaluations of these assets, according to the Indictment, that the defendants allegedly profited while simultaneously causing a liquidity crisis at Platinum. Indictment at ¶ 53.

    The government has now called Arthur Garza as its second witness at trial.[1] Garza was the Chief Technical Officer ("CTO") of Black Elk from 2009 to 2014. He received his Bachelor's and Master's Degrees in petroleum engineering from Texas A&M University in 1989 and 1994, respectively. Garza additionally received a Master's in Business Administration from the University of Oklahoma in 1999. *See* Exhibit A (3500-AGA-1) at 1 and Tr. (attached hereto as Exhibit C) at 526:7-11. Garza has spent his entire career in the oil and gas industry, working at companies including Devon Energy Corporation, Oryx Energy Company, Mobile Oil, Hilcorp Energy, and Texaco. Tr. at 526:23-527:23.

---

[1] Garza was testifying on direct examination when Court broke for the weekend. His testimony is expected to continue on Monday morning. Garza is not being offered as an expert witness and the government provided no expert notice of his testimony.

Case 1:16-cr-00640-BMC   Document 667   Filed 04/27/19   Page 2 of 10 PageID #: 8455

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 2 of 10

As he has already explained to the jury, as CTO at Black Elk, Garza was the "head reservoir engineer" at Black Elk, and had a team of engineering, geologic, and technical staff reporting to him. Tr. at 528:11-20. Garza described the role of a reservoir engineer as "a petroleum engineer" who "really deals with the reservoir itself, the subsurface, and understanding the fluid flow of oil and gas through that – through that porous media . . . through the rock." Tr. at 528:23-529:4. When asked to explain his role in "plain English," Garza testified that his primary responsibilities were evaluating potential acquisition opportunities, managing Black Elk's reserve portfolio and the drilling team. Tr. at 529:5-9. He further described his team's role in the "evaluation of . . . acquisition opportunit[ies]" to be "perform[ing] a technical analysis of the opportunity." Tr. at 529:18, 545:22-23. Garza explained that his interactions with Mr. Nordlicht, Mr. Levy, and Mr. Small were limited to answering "technical question[s] about an investment opportunity or an existing asset that we already owned[.]" Tr. at 532:4-8.

In the brief time Garza has been on direct examination, he has already testified about his opinions concerning the proper way to value oil and gas reserves. Garza explained to the jury that his "rule of thumb," "depending on the opportunity," would be to extrapolate the value of different types of proved reserves provided in a third-party reserve report. Tr. at 543:6-9. Garza further opined that his personal methodology was to value the proved developed producing ("PDP") reserves at 80-100% of the PV10 value listed on the audited reserve report. *Id.* For proven non-producing reserves ("PDNP"), his approach would be to value them at "50 percent to something less than that," again, depending on the opportunity. Tr. at 543:17-20. The reason, in Garza's opinion, that PDNP's are worth fifty percent or lower is because, "there's some assumptions that go into that." Tr. at 543:21-25. Finally, in Garza's opinion, proven undeveloped ("PUD") reserves were worth – again "depending on the opportunity" – only ten percent of the PV10 provided in the reserve report. Tr. at 544:1-7. When asked if he communicated his opinions on the relative value of different classes of oil reserves to members of Black Elk and Platinum, he replied that he only provided these opinions to John Hoffman (Black Elk's CEO) and James Hagemeier (one of Black Elk's founders). *See* Tr. at 544:11-16. The government also attempted to elicit Garza's opinion on how reserves are treated on reserve reports, but the Court rightly sustained the defendants' objection. Tr. at 536:20-537:3.

Based on statements contained in 302 Reports produced by the government, we expect that the government will continue to elicit opinion testimony from Garza. Given his prior statements, Garza is likely to testify and opine on the following: (1) the content and application of SEC rules regarding the valuation of oil and gas assets (Exhibit B (3500-AGA-2) at 5, 6, and 9); (2) the value of the Golden Gate reserves – specifically that, in his opinion, they were worth at most $8 million dollars when Platinum acquired them in 2013 (*id.* at 7); (3) his view that "probable" (as opposed to "proven") reserves should be valued at zero (*id.*); (4) the proper value of Black Elk, Golden Gate, and Northstar (*id.* at 4, 5, 7, 11, 12, and 13); and (5) his analysis of the importance and reliability of various reserve reports and the numbers they contain (*id.* at 6-8). Of particular note, not a single document has been provided to the defense showing Garza applying any of these opinions to any actual valuations or calculations made either at the time of the events in question or since. In other words, the opinions Garza is expressing are completely divorced from any actual values that would

The Honorable Brian M. Cogan
April 27, 2019
Page 3 of 10

allow the defense to challenge either his opinions on his individual methodology or any calculations that he purportedly made.

## II.     Applicable Law

Opinion testimony may be admitted under Federal Rule of Evidence 701 or 702.  Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.  In considering whether proffered testimony should be considered an expert opinion, "a court must focus on 'the reasoning process' by which a witness reached his proffered opinion. . . .  If the opinion rests 'in any way' upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (quoting 4 Weinstein's Federal Evidence § 701.03[1]; Fed. R. Evid. 701 advisory committee's note to 2000 amend.).  The narrow scope of permissible lay opinion testimony serves to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R. Evid. 701 advisory committee's note to 2000 amend.  It also prevents a party from evading the pre-trial disclosure requirements for expert testimony set forth in Federal Rule of Criminal Procedure 16.  *See Garcia*, 413 F.3d at 215.  In order to admit lay opinion, the proponent must satisfy each of the three prerequisites for lay opinion in Rule 701.  *See United States v. Garcia*, 413 F.3d 201 (2d Cir. 2005) (citing *United States v. Grinage*, 390 F.3d 746, 749 (2d Cir. 2004)).

## III.    Argument

Garza's opinions regarding how oil and gas properties should be valued and the appropriate value for specific properties is improper lay opinion testimony under Rule 701 because (1) they are not based entirely on his personal perceptions, (2) they will not assist the jury in its factual determinations, and (3) because they are based on Garza's specialized technical knowledge gained through his education and experience in the oil and gas industry.  As Garza's opinions fall outside the scope of Rule 701, he was not noticed as an expert (or hybrid) witness, and the defendants would be prejudiced by his unnoticed expert testimony, his opinion testimony should be precluded.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 4 of 10

### A. Garza's Opinion Testimony Regarding the Valuation of Oil and Gas Properties is not Admissible as Lay Opinion Testimony Under Rule 701

#### 1. Garza's Valuations of Oil and Gas Properties is Opinion Testimony

Garza's testimony regarding the value he placed (or would have placed) on various oil and gas properties - including those owned by Black Elk, Golden Gate, and Northstar - as well as his opinion on the application of SEC rules on oil and gas valuations relating to various scenarios, relative reliability of various reserve reports and numbers contained therein is clearly opinion testimony. Valuations have been recognized by courts in this circuit as being matters of subjective opinion rather than observable fact. *See, e.g.*, *Fait v. Regions Fin. Corp.*, 712 F. Supp. 2d 117, 122 (S.D.N.Y. 2010) (finding that the value of assets that are "not traded on the New York Stock Exchange or some other efficient market where the fair market value typically is the price at which a share or other asset is trading at any given moment . . . is a matter of judgment and opinion."), *aff'd*, 655 F.3d 105, 110-11 (2d Cir. 2011) (finding that loan loss and goodwill estimates based on fair value "are subjective . . . rather than 'objective factual matters.'"); *see also Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006) (noting that "'fair market value' is an imprecise term" and that "[t]here is no universally infallible index of fair market value.") (quoting *Rhodes v. Amoco Oil Co.*, 143 F.3d 1369, 1372 (10th Cir. 1998)); *In re Iridium Operating LLC*, 373 B.R. 283, 348 (Bankr. S.D.N.Y. 2007) ("[V]aluation is, to a great extent, a subjective exercise . . . .") (internal quotation marks omitted) (quoting *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 548 (D. Del. 2005)); *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 361-62 (S.D.N.Y. 2007) (finding that, due to illiquid market for CMOs, "valuation of CMOs is not a precise science" and thus "a statement as to the value of a CMO . . . may be considerably more a statement of opinion than a report of an objectively determinable fact.").

Oil and gas property valuations are no less subjective, and courts have qualified proposed *experts* attempting to perform the type of analysis proposed to be done here by Garza. *See, e.g.*, *Floyd v. Hefner*, 556 F. Supp. 2d 617, 639 (S.D. Tex. 2008) (holding that proposed *expert* was permitted to testify about oil and gas properties' values because he was a "professional engineer with over forty years of experience in the petroleum industry" and "has represented and advised over 500 energy companies, financial institutions, and government agencies regarding oil and gas exploration and production activities," among other things); *see also SEC v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 508–09 (S.D.N.Y. 2018) (holding that the proposed expert was qualified to offer opinions about "oil-and-gas assets" because, among other things, the proposed *expert* had provided "his expert opinion concerning the value of businesses and securities in the oil-and-gas industry before").

#### 2. Garza's Opinions Fall Outside the Narrow Scope of Admissible Lay Opinion Under Rule 701

Garza's opinions on the valuation of oil and gas properties do not meet the requirements for admissible lay opinion testimony. Rule 701 provides that, "[i]f a witness is not testifying as an

Case 1:16-cr-00640-BMC Document 667 Filed 04/27/19 Page 5 of 10 PageID #: 8458

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 5 of 10

expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; ***and*** (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701 (emphasis added). Because Garza's opinion testimony on valuations does not satisfy any, let alone all three, of Rule 701's prerequisites, the Court should preclude it.

### a) The "Personal Perception" Requirement

Garza's opinions regarding valuations are based on the reserve reports provided by third parties and are thus outside the scope of Rule 701(a). Rule 701 requires lay opinion testimony to be based on the witness's personal perceptions. See Fed. R. Evid. 701(a). Rule 701 also recognizes lay opinion as an acceptable shorthand for the rendition of facts that the witness personally perceived." *Id*. at 211 (quoting 4 Weinstein's Federal Evidence § 701.03[1]). Garza's proffered opinion on the value of a particular set of oil and gas properties is based on his interpretation of reserve reports provided to him by third parties, and is thus not based purely his own observations and perceptions. *See, e.g.*, *Garcia*, 413 F.3d at 212 (holding that an agent's opinion failed to meet the requirement under Rule 701(a) because it was not limited to his personal perceptions but drew on the total information developed by all the officials who participated in the investigation).

### b) The "Helpful to the Jury" Requirement

Garza's opinions regarding the valuation of oil and gas properties are impermissible under Rule 701(b) because they will not help the jury determine the reasonableness of Platinum's valuation of its investments in Level 3 assets. A lay opinion may be received in evidence only if it is "helpful" to the jury in "clearly understanding the witness's testimony or to determining a fact in issue[.]" Fed. R. Evid. 701(b). The jury in this case is being asked to determine the reasonableness of PPVA's valuations of its investments in Level 3 assets (including Black Elk, Golden Gate, and Northstar). Garza's generic, back of the envelope "rule of thumb" on how he personally values oil and gas properties, which he has testified he did not communicate to anyone at Platinum (Tr. at 544:11-16), will at best confuse the jury on the question of whether the defendants acted reasonably in their valuation of PPVA's Level 3 assets.

Under the controlling Fund documents that all investors in Platinum agreed to be bound by, Platinum's valuations of its Level 3 assets were made in the sole discretion of Mr. Nordlicht.[2] As the Court has already heard, while Mr. Nordlicht was given the discretion to make such valuations, Platinum did far more – it hired auditors who had their own valuation experts, and it hired two separate valuation companies to evaluate Mr. Nordlicht's valuations. All four of these companies – BDO, Cohn Reznick, Sterling Valuation and A&M Valuation – found Mr. Nordlicht's valuations to

---

[2] *See, e.g.*, Exhibit D, GX 1828 at JH-000000595, "a significant portion of the Master Fund's assets may be invested in restricted securities. To the extent that the Master Fund makes such investments, the value of those investments will be determined in the Investment Manager's sole discretion."

Case 1:16-cr-00640-BMC Document 667 Filed 04/27/19 Page 6 of 10 PageID #: 8459

**WSGR** Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 6 of 10

be reasonable. None of them ever were asked to evaluate Garza's personal opinions concerning his individual methodologies. That Garza's opinions on the valuation process, relative reliability of reserve reports, and ultimate value of certain oil and gas properties may have differed from Mr. Nordlicht's is thus not relevant as a matter of law,[3] let alone helpful to the question of whether Mr. Nordlicht's determinations were reasonable. And while Garza has worked in the oil and gas industry in the Gulf of Mexico for a long time,[4] he has no experience at all in valuing a hedge fund's equity and debt investments in a private company.[5] Rather, Platinum and Mr. Nordlicht employed their own experts during the period covered by the Indictment to confirm the reasonableness of the valuations of its investments, and Garza was not a part of that process at all. As the jury is being asked to determine the reasonableness of Platinum's valuation of its Level 3 assets, Garza - a lay witness with no personal knowledge of what Mr. Nordlicht did or not consider (or even how Platinum valued its assets at all) and who played no part in the process Platinum used to confirm Mr. Nordlicht's valuations - can thus offer no opinion on this topic that is helpful to the jury.[6]

---

[3] This is the precise issue currently being briefed by the parties in connection with investors who seek to provide testimony about their understanding of how the Fund operated, which understanding is at odds with what the controlling documents actually say. Such testimony is inadmissible as a matter of law, and we adopt the arguments made in our separate submissions on that issue.

[4] The 3500 material makes clear that the value of Golden Gate, located in California, was outside of Garza's experience and competency and he had to rely even more exclusively on third-parties: "GGO was outside of GARZA's expertise. NSAI was a reserve auditor and they had some expertise. NSAI gave values to BEE and revised them based on other inputs." *See* Exhibit B (3500-AGA-2) at 8.

[5] Garza's 3500 material also contains statements indicating he is not qualified to offer many of the opinions the government is seeking to elicit, including that (1) "at the end of the day it was not GARZA determining the price of an acquisition" (Exhibit B (3500-AGA-2 at 2)); (2) "GARZA didn't think BEE bought the Golden Gate assets. GARZA remembered going to Golden Gate and doing a field tour. HOFFMAN started BEE as a Gulf of Mexico company. This wasn't a core acquisition for BEE. GARZA did not recall making a recommendation. BEE never went through the recommendation process" (Exhibit A (3500-AGA-1) at 8); (3) "GARZA did not have much insight into the financial condition of BEE or vendor payables. GARZA was in some management meetings, but not all. Drilling operations was discussed at these meetings" (Exhibit B (3500-AGA-2) at 4); and (4) "GARZA was not in the weeds pertaining to debt classes or financial instruments" (Exhibit A (3500-AGA-1) at 6).

[6] Should the Court determine that Garza's opinions are admissible under Rule 701, they should still be excluded pursuant to Rule 403 because they will confuse the issues and mislead the jury. Garza's opinions such as they are, were only one factor Black Elk considered when evaluating its own potential transactions and not a part of the valuation process of Level 3 assets engaged in by Platinum. Additionally, the government has not established a nexus between Garza's opinion testimony and the mainstream views of other market participants and his testimony should thus be precluded under Rule 403. *See United States v. Litvak*, 889 F.3d 56, 64-65 (2d Cir. 2018).

Case 1:16-cr-00640-BMC Document 667 Filed 04/27/19 Page 7 of 10 PageID #: 8460

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 7 of 10

### c) The "Not Based on Specialized Knowledge" Requirement

Garza's opinions on the valuation of oil and gas properties are impermissible under Rule 701(c) because they are clearly based on scientific, technical, or other specialized knowledge. His opinions on the value of any particular property or how this type of oil and gas property should be valued generally necessarily "results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee's note to 2000 amend. (quotations omitted). The valuation of oil and gas assets is not "familiar to the average person in everyday life[.]" *Garcia*, 413 F.3d at 216.[7] Garza's opinions on how oil and gas properties should be valued, the reliability of reserve reports and their use in valuation, the application of SEC rules on oil and gas valuation, and the proper value of specific oil and gas properties are clearly outside the experience of an average person. For example, Garza had to be asked to explain his job description "in plain English," Tr. at 529:5-6, and his opinion that PDNP reserves are worth 50% of the PV10 listed on a reserve report (or less depending on various unspecified factors), Tr. at 543:17-20, is not the "product of reasoning processes familiar to the average person in everyday life.[8]

Neither at the time at which Garza reached his opinions, nor whether he formed them as a part of his work at Black Elk, is relevant to the analysis of Rule 701. As the Court noted in its decision denying the government's motion to preclude the hybrid testimony of Mr. Lieberman, "'the classic example [of a hybrid witness] is a treating physician in a personal injury case who testifies about the facts of plaintiff's treatment and is allowed to offer opinions such as the cause of the injury and/or the disability that will result.'" Dkt. No. 629 at 5 (quoting *The Helena Assoc., LLC v. EFCO Corp.*, 06-cv-0861, 2007 WL 543999, at *2 (S.D.N.Y. Jan. 5, 2007)). The line between a hybrid

---

[7] *See, e.g., United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. 2013) ("As the Government concedes, this testimony was based on knowledge that Officer Rabideau acquired inspecting other cars at the border. That he did not attend 'mechanic school' does not render his testimony admissible under Federal Rule of Evidence 701. Officer Rabideau acquired his knowledge of how a fuel tank operates through his experience as a border agent inspecting vehicles, not through the reasoning processes of the average person. Therefore, the admission of this testimony was error."); *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004) (finding that, where lay witness's opinion was "not a product of his investigation [or perceptions], but rather reflected specialized knowledge he has because of his extensive experience in international banking, its admission pursuant to Rule 701 was error."); *In re MarketXT Holdings, Corp.*, No. 04-12078(ALG), 2011 WL 1422012, at *6 (Bankr. S.D.N.Y. Jan. 7, 2011) ("Given the inherently subjective and fact-intensive nature of valuation and projection of profits, however, testimony from non-experts regarding the profitability of the MTG or of other traders and the day-trading industry, the benefit of greater buying power, and the state of the securities markets must be excluded as improper lay opinion.").

[8] Indeed, it appears as though the actual values that Garza generated during his work at Black Elk were based – not on the rules of thumb he provided to the jury – but on complex financial modeling, "GARZA's team put together an economic model that included revenue and cost forecasts. The model generated a value. The value was based on reserves, forecasts of discounted cash flows (DCF), and production. At the end of the day it was not GARZA determining the price of an acquisition." Exhibit B (3500-AGA-2) at 2.

Case 1:16-cr-00640-BMC Document 667 Filed 04/27/19 Page 8 of 10 PageID #: 8461

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 8 of 10

witness' expert and lay testimony is not the timing or genesis of his opinion, but rather whether it is based on specialized, technical knowledge:

> Where a person's profession necessarily involves scientific, technical, or specialized knowledge-for example, because the person is a physician or an actuary-the line between 'expert' and 'lay' opinion may be difficult to draw. The line depends, not on the witness's identity or capacity to give expert testimony in the abstract, but on the proposed testimony. ***Thus, a treating doctor (or similarly situated witness) is providing expert testimony if the testimony consists of opinions based on scientific, technical, or other specialized knowledge regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation.*** By contrast, to the extent a treating physician limits his or her testimony to the patient's care and treatment, the physician is not specially retained despite the fact that the witness may offer opinion testimony under Fed. R. Evid. 702, 703, and 705.

*United States Bank Nat'l Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 138 (S.D.N.Y. 2015) (citations omitted) (emphasis added). *See also United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005) (investigating agent's opinion as to various persons' roles in the charged conspiracy that was reached in the course of his investigation and based on their investigative work did not satisfy Rule 701(c) if the agent's reasoning process depended, in whole or in part, on his specialized training and experience); *Langley v. GEICO Gen. Ins. Co.*, No. 1:14-CV-3069-SMJ, 2016 WL 7494303, at *1 (E.D. Wash. July 22, 2016) ("heavy equipment appraiser," whose opinions "were formed during his investigation of the initial total loss collision" was not required to provide an expert report, but was still classified as an "expert" witness); *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (stating that treating physicians, while not subject to specific written report requirements, are expert witnesses).

Under Rule 701, Garza may offer lay opinion about what he observed while working at Black Elk, but to the extent that any of those opinions are based on scientific, technical or specialized knowledge he gained as a part of his education or experience in the oil and gas field, such opinions cannot be admitted pursuant to Rule 701.

      **B.**    **The Government Should Not be Permitted to Admit Garza's Expert Opinion Testimony Under Rule 702**

Garza's opinions should not be admitted under Rule 702 because (1) the government concedes that it is not offering Garza as an expert witness, (2) the government provided no notice of Garza's expert testimony, and (3) forcing the defendants to cross an unnoticed expert witness without an opportunity for adequate preparation would significantly prejudice the defendants.

The government concedes that it is not offering Garza as a 702 witness. Tr. at 537:3. The government – despite repeated opportunities to do so – provided the defendants with no notice of Garza's expert testimony. Rule 16(a)(1)(G) provides that at the defendant's request, the

Case 1:16-cr-00640-BMC   Document 667   Filed 04/27/19   Page 9 of 10 PageID #: 8462

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 9 of 10

Government must give to the defendant a written summary of any expert testimony that it intends to use "during its case-in-chief at trial," and that summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). The Advisory Committee Notes to the 1993 Amendment to Rule 16 note that "[a]lthough no specific timing requirements are included [in the Rule], it is expected that the parties will make their requests and disclosures in a timely fashion." The Rule "is intended to minimize [the] surprise that often results from unexpected testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." *United States v. Cruz,* 363 F.3d 187, 196 n.2 (2d Cir. 2004) (quoting *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (modification in original). Where a party fails to comply with Rule 16, the court may preclude the introduction of evidence. *United States v. Healey*, 860 F. Supp. 2d 262, 268 (S.D.N.Y. 2012). In this case, the government's expert disclosure deadline was July 15, 2018. *See* Order, 16-cr-00640-BMC (May 11, 2018). On July 13, 2018, the Government confirmed that it did not intend to introduce any expert testimony during its case-in-chief. *See* Dkt. No. 356. On April 8, 2019, the government moved to preclude the testimony of an expert witnesses and a hybrid fact-expert witness noticed by the defendants. Dkt. No. 603. In that motion the government confirmed to the Court that several fact witnesses would provide, "background information on terminology and practices of the oil and gas industry, including but not limited to reserves and reserve reports. These witnesses will introduce the jury to certain oil-and-gas industry specific concepts that are within the purview of fact testimony. They will not be providing expert opinion testimony." *Id*. at 4. The defendants have relied on this representation in preparing for Garza's cross examination. Despite these assurances, now that he has begun to testify, it is clear that – far from a mere lay witness – Garza is a hybrid witness for whom the government should have provided notice. Instead, the government has sandbagged the defense by attempting to offer Garza's expert opinion despite providing no notice of his opinions, no notice of his methodologies, or the facts on which he relied.[9]

Because Garza's opinions related to the valuation of oil and gas properties do not satisfy the requirements of Rule 701, he was not offered or ever noticed under Rule 702, and the defendants would be significantly prejudiced by his testimony, Garza's expert opinions should be precluded.

\*\*\*

---

[9] Given that the defendants were not provided notice of Garza's testimony under Rule 702, and were provided no information regarding his methods and only basic information regarding his credentials, we will not address whether he is qualified to opine on these topics. To the extent that the Court would like briefing on the issue once the necessary information is disclosed, we will certainly comply. We would note that Garza has already conceded that he is not qualified to opine on the value of Golden Gate, (Exhibit B (3500-AGA-2) at 2), and as his purported methodologies appear to of his own creation, we have serious concerns that he could ever be qualified under *Daubert*.

Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
April 27, 2019
Page 10 of 10

      For the foregoing reasons, we respectfully request that Garza's upcoming improper opinion testimony should be excluded and the expert opinions he has already provided to the jury should be stricken from the record.

                                        Respectfully submitted,

                                        WILSON SONSINI GOODRICH & ROSATI
                                        Professional Corporation

                                        *s/ Morris J. Fodeman*
                                        Morris J. Fodeman
                                        Michael S. Sommer

Cc:  All Counsel of Record (via CM/ECF)