

**WSGR**  Wilson Sonsini Goodrich & Rosati
PROFESSIONAL CORPORATION

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022

PHONE 212.999.5800
FAX 212.999.5899
**www.wsgr.com**

May 1, 2019

**VIA CM/ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     **Re:**    *United States v. Mark Nordlicht, et al.*, No. 1:16-cr-00640-BMC

Dear Judge Cogan:

     Defendant David Levy moves *in limine* to preclude the government from eliciting improper lay opinion testimony from Lily Cheung regarding the valuation of oil and gas properties. For the reasons set forth below and in our letter regarding the testimony of Arthur Garza, Dkt. No. 667, we respectfully submit that the government's proffered opinion testimony must be precluded in order to afford the defendants a fair trial.

**I.**    **Background**

     Ms. Cheung is a reserve engineer employed by Netherland, Sewell and Associates, Inc. ("NSAI"). Ms. Cheng has a degree in Mechanical Engineering from the Massachusetts Institute of Technology as well as a Master's in Business Administration from the University of Texas. *See* Exhibit 1 [3500-LC-1 at 1]. According to the reports of Ms. Cheung's interviews with the government, Ms. Cheung worked on the reserve reports generated by NSAI for Black Elk and North Star, but not for the preliminary estimate NSAI performed for Golden Gate. *See* Exhibit 2 [3500-LC-2 at 3-5]. The information used by Ms. Cheung and others at NSAI to generate reserve reports was provided directly by the companies for which the reports were generated. *Id*. at 2-3. Ms. Cheung did not receive any information directly from Platinum.[1]

     Based on the FBI 302 Reports of Ms. Cheung's interviews with the government, Ms. Cheung's may offer testimony regarding topics including:[2]

---

[1] The only alleged co-conspirator listed in Ms. Cheung's report who she may have received some limited information from was Jeff Shulse – who is an alleged co-conspirator in the Black Elk bond portion of the Indictment not the Platinum investment portion. *See* Exhibit 2 [3500-LC-2 at 4].

[2] Defendants wrote to the government this evening to confirm the scope of Ms. Cheung's testimony, but – given the hour – as of the time of filing have not received a response.

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LOS ANGELES   NEW YORK   PALO ALTO

SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

W͞S͞G͞R   **Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
May 1, 2019
Page 2 of 3

- The proper application of SEC rules regarding the valuation treatment of oil reserves – ("The reserve volume of an undrilled well is determined by the geology of the site. For an SEC or PRMS report the only reserves that can be counted as proved are those reserved that the well has seen." (Exhibit 1 [3500 LC-1 at 3]); ("Within five years there needs to be activity demonstrating that the client is working toward recovering the reserves if NSAI is going to keep those reserves on the reserve report." (*Id.*]); ("The SEC dictated a five year window from the time you disclosed a location you wanted, to drill or develop [the location]. If the location was not drilled or developed within five years, it was taken off the books or moved to a different category. This applied to the proven category." (Exhibit 2 [3500-LC-2 at 2])

- The proper application of SEC rules regarding the proper oil price to apply to PV-10 calculations – ("The SEC calculation for the price of oil is based on the averaged price of oil for the first day of each of the previous 12 months." (Exhibit 1 [3500-LC-1 at 2]); ("There was an SEC prescribed price deck for all SEC filers. SEC filers had some form of public offering. The client price deck for non-SEC reports could use NYMEX futures strip pricing.") (Exhibit 2 [3500 LC-2 at 2]))

- Opinions regarding the relationship between SEC pricing and NYMEX pricing – ("The NYMEX price was lower than the SEC price deck. This is uncommon because the NYMEX is typically on the rise." (Exhibit 1 [3500-LC-1 at 7]))

- Opinions regarding the impact oil prices had on the economic viability of a reserve – ("If the oil price fell to a certain level, the reserve could become uneconomic. This meant the reserve could not be extracted economically on that price deck.") (Exhibit 2 [3500-LC-2 at 2])

- Opinions regarding the relative value of various categories of oil reserves to investors – ("Proved reserves, especially PDP, were the main focus of bankers and investors. These hydrocarbons were coming out and there was a not any drilling involved. PDP were more of sure bet. . . . In CHEUNG's experience, investment companies did not put 100% of the value to PDNP or PUD reserves. There usually was not value assigned to probably or possible reserves." (Exhibit 2 [3500 LC 2 at 3])).

- Opinions regarding the reliability of reserve reports and their use in valuation – (*see*, *e.g.*, Exhibit 2 [3500-LC-2 at 4] (comparing D&M and NSAI reserve estimates for Golden Gate)) (*id.* at 3] opining on the relative value of different categories of reserves to investors)

## II.    Applicable Law

As noted in our brief regarding the testimony of Mr. Garza, opinion testimony may be admitted under Federal Rule of Evidence 701 or 702. Your Honor held on April 28, 2019, that Mr. Garza, a lay witness was precluded from testifying regarding his opinions "on how oil and gas properties should be valued, the reliability of reserve reports and their use in valuation, the

**WSGR** **Wilson Sonsini Goodrich & Rosati**
PROFESSIONAL CORPORATION

The Honorable Brian M. Cogan
May 1, 2019
Page 3 of 3

application of SEC rules on oil and gas valuation, and the proper value of specific oil and gas properties" because such opinions "are clearly outside the experience of an average person."  Dkt. No. 672, at 3.

## III.    Argument

For the same reasons the Court precluded Mr. Garza's improper opinion testimony, Ms. Cheung's opinions regarding how oil and gas properties should be valued, the appropriate value for specific properties, the reliability of reserve reports and their use in valuation, and the application of SEC rules on oil and gas valuation should be precluded.  Such opinions are not within the knowledge and experience of the average person and are thus outside of the scope of lay opinion testimony permitted by Rule 701.  The government has not offered or noticed Ms. Cheung as an expert under Rule 702.   Forcing the defendants to cross an unnoticed expert witness without an opportunity for adequate preparation would significantly prejudice the defendants.  As was the case with Mr. Garza, the defendants have relied on the government's repeated representations that they would offer no expert testimony in its case-in-chief. Despite these assurances, the government's examination of Mr. Garza make clear that they intend to use certain fact witnesses as hybrid witnesses for whom the government should have provided notice.[3]

***

For the foregoing reasons, we respectfully request that the government be precluded from eliciting any improper opinion testimony.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Morris J. Fodeman*
Morris J. Fodeman
Michael S. Sommer

Cc:  All Counsel of Record (via CM/ECF)

---

[3] Given that the defendants were not provided notice of Ms. Cheung's testimony under Rule 702, and were provided only basic information regarding her credentials and methods, we will not address whether she is qualified to opine on these topics.  We note that she is at least unqualified to opinion on Golden Gate as she did not perform the work associated with NSAI's preliminary estimate.  *See* Exhibit 2 [3500-LC-2 at 4].  To the extent that the Court would like briefing on the issue once the necessary information is disclosed, we will certainly comply.