

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

ALC/DCP/LHE/PTH
F. #2016R00505

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 29, 2019

BY ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Mark Nordlicht, et al.
                Criminal Docket No. 16-640 (BMC)

Dear Judge Cogan:

        The government respectfully submits this letter in response to defendant David Levy's motion for disclosure of the grand jury minutes that relate to Counts Six through Eight of the above-captioned Indictment, or the charges relating to the "Black Elk bond scheme." ECF Docket No. 780 ("the motion"). This motion was joined by defendant Mark Nordlicht. See ECF Docket No. 782. Both Levy and Nordlicht were convicted of the Black Elk bond scheme charges at trial.

        As set forth in further detail herein, the motion should be denied because the defendants can make no showing of constructive amendment, even assuming, arguendo, that the allegations in the motion are true. Additionally, grand jury minutes are presumed to be maintained in secrecy, and the defendants' speculative motion does not meet the high bar to justify their disclosure.

I.        Factual Background

        As pertinent to the instant motion, the Indictment in this case alleges "a scheme to defraud third-party holders of the [Black Elk bonds] (the 'Bondholders') and to deprive the Bondholders of the proceeds of the sale of the vast majority of Black Elk's most lucrative assets through material misrepresentations and omissions about, among other things, Platinum's ownership of and control over the [Black Elk bonds.]" Indictment ¶ 73. The conspirators sought, via a vote of the Bondholders, to amend the indenture governing the Black Elk bonds so as to permit asset sale proceeds to be used to pay holders of Black Elk's Series E preferred equity. The Indictment specifically alleges that, in order to conceal the degree of Platinum's ownership and control of Black Elk bonds, Nordlicht and Levy, together with others, caused the Platinum Partners Value Arbitrage Fund ("PPVA") to transfer a portion of its Black Elk bonds to

a related entity called Beechwood. Id. ¶ 81. The defendants and their co-conspirators then directed that the consent solicitation document, which was distributed to all Bondholders on July 16, 2014 and delineated the terms of the vote and the proposed amendments to the indenture, state that PPVA and its affiliates controlled only $18,321,000 of Black Elk bonds, when, in reality, across Platinum's various funds, including the Platinum Partners Credit Opportunities Fund ("PPCO") and the Platinum Partners Liquid Opportunities Fund ("PPLO"), and the Beechwood entities, BAM and BBIL, the defendants and their co-conspirators controlled over $98 million of the $150 million bonds outstanding. Id. at ¶¶ 82, 84. The Indictment further alleges that the defendants and their co-conspirators caused PPCO, PPLO, BAM and BBIL to consent, or vote "yes," to the proposed amendments to the indenture. Id. ¶ 85. The Indictment then states that, at the close of the consent period, "the trustee revealed that the holders of $110,565,000 or approximately 73.71 percent of the bonds had validly consented to the Consent Solicitation, thereby causing an amendment to the indenture agreement." Id. ¶ 86.

At trial, the government presented evidence and argued to the jury consistently with the allegations summarized above. Specifically, the government argued that the defendants committed fraud when they stated, in the consent solicitation document, that PPVA and its affiliates controlled only $18,321,000 of Black Elk's bonds, when, in reality, those entities controlled over $98 million—or 66%—of the outstanding bonds. Tr. at 6617. The government also presented evidence showing that PPCO, PPLO, BAM and BBIL, which also held Black Elk bonds, submitted consents to the proposed amendments to the indenture, see GX 727, 728 and 760. The government further elicited from Black Elk's attorney, Robert Shearer, that when he learned from the conspirators for the first time on August 14, 2014, the day after the voting period closed, that certain entities that had a relationship to Platinum—the names of which were never provided to him, but which the evidence demonstrated were PPCO and PPLO—he decided not to count those entities' votes and confirmed that the consent solicitation passed without them. Id. at 4922. Mr. Shearer testified that prior to the consent solicitation closing, he was never made aware of the Beechwood bond holdings. Id. at 5117-18, 5120.

In the motion, the defendants contend that disclosure of the grand jury minutes is justified by their allegations of injustice and government misconduct. Mot. at 2. Specifically, the defense alleges that the government "improperly shifted its theory" as to the Black Elk bond scheme mid-trial, in response to Mr. Shearer testifying that the votes submitted on behalf of PPCO and PPLO were never counted in determining whether the proposed amendments passed. Id. Citing two portions of the government's summations, the defense argues that the government "broaden[ed] and constructively amend[ed] the Indictment," and that they are entitled to review the grand jury minutes in order to determine whether Levy was convicted of conduct that was the subject of the grand jury's indictment. Id.

II.     Analysis

   A. The Defendants' Proffered Scenario Would Not Establish Constructive Amendment

The defendants' motion should be denied because, even assuming their allegations regarding the government's presentation to the grand jury in this case are true, such circumstances would not establish that the government's proof at trial resulted in a constructive amendment of the Indictment.

2

1. Applicable Law

A constructive amendment to an indictment can arise when the government's proof at trial and the trial court's jury instructions "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996) (internal quotations omitted).  However, a court will not find constructive amendment where "a generally framed indictment encompasses the specific legal theory or evidence used at trial." United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003) (citing United States v. Wallace, 59 F.3d 333, 337 (2d Cir. 1995)); see also Stirone v. United States, 361 U.S. 212, 218 (1960) (noting that an indictment written in general terms may support conviction on alternative bases).

An impermissible alteration of the government's proof or the court's charge must affect an essential element of the offense. United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985).  See also United States v. LaSpina, 299 F.3d 165, 181 (2d Cir 2002) (same).  Because the proof at trial is not required to be a precise replica of the charges contained in the indictment, courts in this Circuit permit "significant flexibility" in the government's proof at trial, if the defendant was provided notice of the "core of criminality to be proven at trial" as part of the indictment.  See e.g., United States v. Patino, 962 F.2d 263, 266 (2d Cir. 1992) (citing United States v. Heimann, 705 F.2d 662, 666 (2d Cir. 1983)).  Furthermore, "[t]he core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview." United States v. D'Amelio, 683 F.3d 412, 418 (2d Cir. 2012).  In the context of wire fraud, the "core of criminality" is the nature of the scheme. See, e.g. United States v. Dupre,  462 F.3d 131,140-41 (2d Cir. 2006) (no constructive amendment where evidence "concerned the same elaborate scheme to defraud"); United States v. Stitsky, 536 F. App'x 98, 102-03 (2d Cir. 2013) (summary order).

2. Discussion

The defendants argue that, if the grand jury minutes reflect a theory that the defendants conspired to cause PPCO and PPLO to vote their undisclosed bonds, together with the Beechwood entities BAM and BBIL, the proof at trial would amount to a constructive amendment of the indictment because, at trial, Mr. Shearer testified that the PPCO and PPLO votes were excluded from the ultimate vote count.  As a basis for their assertion that the grand jury minutes will support this argument, the defendants claim that it was only after Shearer testified that he did not count the votes submitted by PPCO and PPLO that the government "shifted its theory" and "broadened" the Indictment.  This argument fails as a matter of both fact and law.

First, the defendants are simply incorrect that the government "broadened" its theory following Mr. Shearer's testimony at trial.  As an initial matter, and as the defendants are well aware, the government produced evidence, including 18 U.S.C. § 3500 material for Mr. Shearer and marked exhibits, well in advance of trial reflecting that the PPCO and PPLO bonds were ultimately excluded from the vote.  Moreover, Mr. Shearer's testimony regarding his decision to exclude the PPCO and PPLO bonds from his calculation was elicited on direct examination, by the government.  See Tr. at 4922.  That testimony was consistent with the government's charging theory and came as no surprise to any of the parties.  The government's opening statement and closing arguments consistently explained that the defendants and their co-

conspirators lied by hiding the PPCO, PPLO and Beechwood bond holdings they controlled at the start of the voting period when the fraudulent consent solicitation document was distributed to the Bondholders, and that the defendants and their co-conspirators caused PPCO and PPLO to vote their bonds in favor of the proposed amendments (which they in fact did). There was no mid-trial "shift" in theory as the defendants allege.

More significantly, the defendants' nuanced distinction simply does not matter in a constructive amendment analysis. The "core of criminality" of the offenses of conviction is that the defendants conspired to lie to the Bondholders, via the consent solicitation document, about (1) the amount of bonds that they controlled, and (2) their intentions as to which of their bonds would be counted in the Bondholder vote. See Indictment ¶ 73. The fraud was complete at the time the defendants agreed that this material misrepresentation should be made to the Bondholders in the July 16, 2014 consent solicitation document. Even if the defendants had later been prevented from actually voting their bonds, they could still have been found guilty of the charged offenses, so long as the jury was convinced beyond a reasonable doubt that they knowingly and willfully participated in the scheme. See United States v. Pierce, 224 F.3d 158, 166 (2d Cir. 2000) ("The wire fraud statute punishes the scheme, not the success."); United States v. Wallach, 935 F.2d 445, 461 (2d Cir. 1991) ("[T]he government is not required to show that the intended victim was actually defrauded"); United States v. Trapilo, 130 F.3d 547, 552 n. 9 (2d Cir.1997) ("'[T]he crime of conspiracy is complete upon the agreement to violate the law, as implemented by one or more overt acts . . . and is not at all dependent upon the ultimate success or failure of the planned scheme.'"). Therefore, the issue of whether votes submitted by PPCO, PPLO, BBIL or BAM were ultimately counted relates only to the particular way that the defendants carried out the crime, and is irrelevant to the constructive amendment analysis.[1] See United States v. D'Amelio, 683 F.3d 412, 418 (2d Cir. 2012) ("[t]he core of criminality of an offense involves the essence of a crime, in general terms; the particulars of how a defendant effected the crime falls outside that purview"); United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985) ("An impermissible alteration of the government's proof or the court's charge must affect essential element of the offense.").

Furthermore, even if the factual details regarding the ultimate outcome of the Bondholder vote were somehow relevant, the specific distinction put forward by the defendants would still be entirely immaterial to the constructive amendment analysis. The defendants were charged with rigging the Bondholder vote by concealing the total number of bonds they controlled. The bonds held by the Beechwood entities, which were never disclosed to anyone, including Mr. Shearer, comprised the majority of bonds that voted in favor of the consent solicitation. The defendants still managed to in fact rig the vote, even taking the PPCO and PPLO holdings out of the equation. While the precise means by which the defendants carried out the scheme are irrelevant in a constructive amendment analysis in any event, the means alleged in the Indictment and the presentation of evidence at trial are entirely consistent with one another—both described a rigged vote accomplished via undisclosed bond holdings. To the

---

[1] Furthermore, as the government argued on summation, the defendants' eleventh-hour disclosure to Mr. Shearer of the PPCO/PPLO holdings was itself a half-truth made in furtherance of the fraudulent scheme. Tr. at 6675-76. The defendants disclosed only those bonds held by entities easily connected to Platinum, while continuing to conceal those held by a related party—Beechwood.

4

extent there is any distinction between the Indictment's allegations and the specific details of the government's trial evidence, that distinction cannot establish a constructive amendment given the flexibility afforded the government in presenting its proof. See Patino, 962 F.2d at 266 (the government is entitled to significant flexibility in proof); United States v. Skelly, 442 F.3d 94 (2d Cir. 2006) (no constructive amendment where indictment put defendant on notice of fraudulent scheme of illegal sales practices, and proof at trial further described the modus used by the defendant to accomplish the illegal sales practices); United States v. Knuckles, 581 F.2d 305, 312 (2d Cir. 1978) (no constructive amendment where the charge was distribution of heroin and the proof at trial involved the distribution of cocaine, and the jury charge permitted conviction based on the distribution of either drug because the core of the criminality was distribution of narcotics).

Finally, a "defendant alleging a constructive amendment must establish that the evidence or the jury charge on which he was tried <u>broadens</u> the possible bases for conviction <u>beyond</u> the indictment." United States v. Dove, 884 F.3d 138, 148-9 (2d Cir. 2018) (emphasis added). If they amount to allegations of any discrepancy whatsoever, the defendants' claims suggest that the government's proof at trial <u>narrowed</u> the Indictment's allegations from a scenario in which both the Platinum and Beechwood entities' bonds counted toward the majority in the Bondholder vote, and thereby rigged the vote, to one in which only the Beechwood entities ultimately affected the outcome.

In sum, the defendants' allegations fail to provide any basis for a constructive amendment claim, and their meritless motion does not justify disclosure of the grand jury minutes. Consequently, the Court should deny the defendants' motion in its entirety.

    B.   <u>The Court Should Not Order the Disclosure of Grand Jury Materials</u>

        1.  <u>Applicable Law</u>

Generally, defendants in criminal cases have no absolute right to inspect the grand jury minutes, and any such disclosure should be made upon a showing of a "particularized need." See Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399-400 (1959); United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978). Although grand jury minutes may be disclosed in limited circumstances pursuant to Federal Rule of Criminal Procedure 6(e)(3), the power of the court to order such disclosure for the use of the defense should rarely be exercised. See, e.g., Untied States v. Rosen, 259 F. Supp. 942 (S.D.N.Y. 1966).

The only circumstance under which a district court may authorize the disclosure of grand jury matters is where "a defendant shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed R. Crim. P. 6(e)(3)(E). But first, the defendant must satisfy a heavy burden of showing that a "<u>compelling necessity</u>" outweighs the strong public policy in favor of grand jury secrecy. Proctor & Gamble, 356 U.S. at 682 (emphasis added); United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978) (defendant seeking disclosure of grand jury matters must show a "particularized need"). Thus, in the Second Circuit, the "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990) (citations and internal quotations omitted); see also United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of government misconduct."). This standard is equally applicable to a defendant's

request for the court to conduct an in camera review of a grand jury transcript. United States v. Laster, No. 06-CR-1064 (JFK), 2007 U.S. Dist. LEXIS 77732, at *6-*8 (S.D.N.Y. Oct. 19, 2007). The public interest in maintaining grand jury secrecy is "not eliminated merely because the grand jury has ended its activities." Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222 (1979) (noting that courts must consider not only immediate effects of disclosure on a specific grand jury, but also the possible effect of disclosure "upon the functioning of future grand juries.").

2. Discussion

As discussed above, the defendants entirely fail to show any particularized need for the grand jury minutes. Their allegations regarding a "shift in theory" are disingenuous and factually baseless, and even if they were true, they would not substantiate a constructive amendment claim.

Motions for disclosure similar to the defendants' are routinely denied. See United States v. Mangano, No. 16-CR-540 (JMA), 2018 WL 851860, at *16 (E.D.N.Y. Feb. 9, 2018); United States v. Klein, No. 16-CR-442 (JMA), 2017 WL 1316999, at *14 (E.D.N.Y. Feb. 10, 2017); United States v. Apodaca, 287 F. Supp. 3d 21, 47-48 (D. D.C. 2017) (a defendant's speculation regarding a potential constructive amendment issue is not a particularized need that would overcome the presumption against disclosure of grand jury materials); United States v. Hernandez, No. CR-14-120 (EMC), 2015 WL 4498084, at *8 (N.D. Cal. July 23, 2015) (defendants have "no particularized need . . . to obtain the grand jury transcripts so that they can confirm that the grand jury did not pass on the factual allegations the Government intends to prove at trial"). And this is for a good reason—if a simple desire to engage in a fishing expedition for wrongdoing in grand jury minutes merited their disclosure, the clearly-established law requiring a showing of a "compelling necessity" would lose all meaning. United States v. Wilson, 565 F. Supp. 1416, 1436 (S.D.N.Y. 1983) ("speculation and surmise as to what occurred before the grand jury" not sufficient to warrant disclosure). In view of the non-viability of their constructive amendment theory, the defendants cannot establish any basis for disclosure, let alone a compelling necessity.

III. <u>Conclusion</u>

For all of these reasons, the government respectfully submits that the defendants' motion should be denied in its entirety.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/
Alicyn L. Cooley
David C. Pitluck
Lauren H. Elbert
Patrick T. Hein
Assistant U.S. Attorneys

Cc:    Clerk of the Court (BMC) (by ECF)
       Defense Counsel (by ECF)