

Wilson Sonsini Goodrich & Rosati
Professional Corporation

1301 Avenue of the Americas
40th Floor
New York, New York 10019-6022

O: 212.999.5800
F: 212.999.5899

March 16, 2022

**VIA CM/ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

Re: *United States v. Mark Nordlicht and David Levy*, No. 1:16-cr-00640-BMC

Dear Judge Cogan:

We represent defendant David Levy in this matter.  This letter is respectfully submitted to identify the arguments in our post-trial motions the Court did not reach at the time it granted Mr. Levy's Rule 29 motion and provisionally granted his Rule 33 motion, as well as to supplement the record with respect to certain of those previously filed arguments.  We also renew Mr. Levy's motion that there was insufficient evidence of his criminal intent and knowledge that "Affiliates" of Black Elk, including Beechwood, could not have their votes counted in connection with changing the Black Elk Indenture – the very ground upon which this Court granted Mr. Levy's Rule 29 motion and provisionally granted his Rule 33 motion.  This renewed motion is based on the recent discovery that the government presented erroneous testimony and argument to the jury with respect to the Trust Indenture Act (the "TIA") – erroneous evidence the Second Circuit then relied upon when it reversed this Court's Rule 29 and 33 decisions.

Counsel for co-defendant Mark Nordlicht has made a supplemental submission as well (the "Nordlicht Submission") detailing issues that are common to both Mr. Nordlicht and Mr. Levy.  Mr. Levy adopts and joins in each of those arguments and incorporates them herein.

## I. Grounds for Post-Trial Relief

The previously filed and still pending grounds for post-trial relief as to Mr. Levy are as follows:

- Materiality (Rules 29 and 33):  the trial evidence established that the number of bonds owned by Platinum entities was not material.  Attorney Shearer testified to this very point, and the testifying bond owners both made clear that they had been misled as to the numbers *not* by any conduct by any defendant, but by the misleading press release knowingly issued by Attorney Shearer.  Moreover, at least one of the government's investor witnesses from

WILSON SONSINI

Honorable Brian M. Cogan
March 16, 2022
Page 2

      the Phoenix Fund then purchased additional Black Elk bonds *after* the consent solicitation was approved and *after* the preferred equity holders were paid, further demonstrating the lack of any materiality concerning the numbers provided to investors.

- Government Misconduct (Rule 33): the trial record established that the prosecutors engaged in misconduct both in advance of and during the trial, and on numerous occasions presented argument and witness testimony to the jury that was false. This motion is supplemented by the Nordlicht Submission and the discussion below.

- Conspiracy to Commit Wire Fraud (Rule 29): the government theory on this Count was invalid as a matter of law as the government failed to prove that the Black Elk bond holders were entitled to proceeds of the Renaissance Sale under the Black Elk indenture. As such, the government failed to demonstrate that Mr. Levy had the requisite intent to obtain money or property from the bond holders, a necessary predicate for the Count.

- Constructive Amendment/Prejudicial Variance (Rules 29 and 33): in both the indictment and its opening statement, the government claimed that the result of the Black Elk consent solicitation was assured as a result of the votes by bonds owned by Platinum entities. After Attorney Rob Shearer, on cross-examination, confirmed that *none* of the Platinum-owned Black Elk bonds were counted for purposes of the consent solicitation, the government shifted its theory of prosecution to argue exclusively that Beechwood was an affiliate of Platinum, and therefore those votes should also have been excluded. Based on the indictment and the government's opening statement, it appears clear that this was not the theory of prosecution presented to the grand jury, and it was certainly not the theory of prosecution disclosed to the defense in advance of trial. We recognize that the Court addressed aspects of this argument in its recent decision denying the motion of Defendants Nordlicht, Levy and Small for access to the grand jury minutes. *See* ECF No. 885. We nevertheless press this motion and join in the supplemental arguments contained in the Nordlicht Submission.

The renewed motion pursuant to Rule 29 and 33 is as follows:

- Lack of Criminal Intent (Rules 29 and 33): there was insufficient evidence of Mr. Levy's criminal intent and knowledge that affiliates of Platinum could not vote their respective Black Elk bonds – the very ground upon which this Court granted Mr. Levy's Rule 29 motion and provisionally granted his Rule 33 motion. Indeed, the evidence pointed to by the government at trial, and which the Second Circuit relied upon in reversing this Court's Rule 29 and 33 determinations, related solely to the TIA and not the Indenture, and was false. Once the erroneous TIA evidence is put aside, the record is even clearer that Mr. Levy was never on notice that affiliates of Black Elk could not vote to amend the Indenture. Moreover, the sole basis upon which the Second Circuit found that there was

WILSON SONSINI

Honorable Brian M. Cogan
March 16, 2022
Page 3

sufficient evidence of Mr. Levy's knowledge of the "Affiliate Rule" were two emails erroneously describing *the TIA* – which we now know did not foreclose either Platinum or Beechwood from voting their respective Black Elk bonds (*see* Section II, *infra*).

## II. The Government's Erroneous Presentation of Evidence Concerning the Trust Indenture Act

As the Court is aware from having presided over the lengthy trial in this matter, the government presented evidence to the jury through testimony and exhibits that Mr. Levy and others violated the TIA when they caused various Platinum funds and Beechwood to vote in favor of a change to the Black Elk Indenture. *See e.g.* Tr.[1] 4720 (Shearer testifying that the TIA "says that bonds that are held by Black Elk and by any entity that controls Black Elk, or is in common control with Black Elk, can[not] be counted in determining a vote under the indenture"); Tr. 4735-36 (Shearer testifying that under the "the Trust Indenture Act . . . any equity holder of Black Elk at the time the bonds were issued, or any other person controlling, controlled by, or under direct or indirect common control with those entities, those bonds would be excluded"); Tr. 4755-58 (Shearer testifying the "idea behind the [Indenture] provision is in the Trust Indenture Act" indicating that "entities that controlled Black Elk and held bonds . . . couldn't vote those bonds"); Tr. 4832-33 (Shearer testifying that he explained the TIA "Affiliate Rule" to Jeff Shulse that "requires that you exclude bonds held by entities that control the issuer from the vote process"); Tr. 4833-34 (Shearer testifying that the language in the consent solicitation "tracks the language in Section 316(a) of the Trust Indenture Act"); Tr. 4851 (Shearer testifying that the consent solicitation "refer[s]" to the TIA which "says we should not count bonds held by entities that have control over Black Elk"); Tr. 4863-67 (Shearer testifying that he had discussed the "Affiliate Rule" with Shulse and Dan Small and "explained Section 316(a) of the Trust Indenture Act and how it worked"); Tr. 5156 (Shearer testifying that the "operative definition relating to control and affiliates for the purposes of [the] consent solicitation statement" was located in the TIA); Tr. 5637-38 (government introducing GX-689 (attached hereto as <u>Exhibit 2</u>), Brittany Sakowitz email to Small discussing Section 316(a) of the TIA).

Having crafted the "Affiliate Rule" as deriving from the TIA, the government then argued to the jury that the defendants had violated that purported "rule." *See, e.g.*, Tr. 6615-16 (government arguing to jury that "the language of the [the 'Affiliate Rule'] said that an affiliate, the people who could not be counted in the vote, were the ones who were directly or indirectly controlling or controlled by or under direct or indirect common control with Black Elk"); Tr. 6612 (government arguing that "under the rules, Platinum and its affiliates couldn't count in the votes. They couldn't influence the vote."); Tr. 6649-50 (government arguing that Beechwood was controlled by Platinum because "the affiliate rule makes you look at control. . . . Control is pretty

---

[1] Cited excerpts of the Trial Transcript are attached hereto as <u>Exhibit 1</u> ("Tr.").

WILSON SONSINI

Honorable Brian M. Cogan
March 16, 2022
Page 4

cut and dry.  You can use your common sense, your experience in your own lives, when you think about control."); *id.* (government arguing "the people voting who care about Black Elk's interests and Platinum's interests, who are the insiders in this whole thing, these are the people who can't vote.  They cannot influence the vote."); Tr. 6668-70 (government arguing defendants "knew about this rule, the affiliate rule, that prevented insiders from being counted in the vote" based on, *inter alia*, GX-689 and citation to Section 316(a) of the TIA); Tr. 7081 (government arguing defendants "knew about the affiliate rule").

In response, Mr. Levy argued that he was not aware that Platinum (or Beechwood for that matter) could not vote their respective bonds to change the Indenture because lawyers at three different law firms had all worked together to do just that when the Indenture change was first pursued in the private consent process.  *See* Tr. 5036-39, 6970-72.  Indeed, Mr. Levy received the actual signed consents prepared by all those lawyers showing that they had both advised Platinum to vote its Black Elk bonds, and that those bonds were then so voted.  *See* GX-266 (attached hereto as Exhibit 3).  And Mr. Levy was never told by anyone that the legal advice from the lawyers at those three firms was in any way wrong.  Tr. 5059-60, 5065.  As Mr. Levy argued in summation, more than 10 lawyers had failed to understand the voting restrictions imposed by the TIA and the Black Elk Indenture; Mr. Levy, a non-lawyer, should not be held to have understood these legal documents when the lawyers themselves did not understand them.  *See* Tr. 6969-87; 6998-7004; and 7007-08.  The jury apparently disagreed and convicted Mr. Levy on the Black Elk counts.

Your Honor then corrected this injustice by granting Mr. Levy's Rule 29 motion, finding that "taken as a whole, and viewed in the light most favorable to the Government, th[e] evidence of Levy's criminal intent [wa]s insufficient to sustain a guilty verdict[,]" and that "[e]ven making reasonable inferences in favor of the Government, and deferring to the role of the jury in weighing evidence and assessing credibility, the Government failed to meet its burden of proving beyond a reasonable doubt that Levy had criminal intent."  ECF No. 800 at 27-28.

The Second Circuit thereafter reversed this Court's granting of Mr. Levy's Rule 29 motion (as well as the provisional grant of his Rule 33 motion).  *United States v. Levy*, No. 19-3207-cr (L) (2d Cir. Nov. 5, 2021), ECF No. 138 (hereinafter "2d Cir. Order").

Since the jury's verdict, and since the Second Circuit reversed this Court's determination that the government had failed to present sufficient evidence of Mr. Levy's criminal intent and knowledge, Mr. Levy has learned that the evidence and argument the government presented to the jury (and to the Second Circuit) regarding restrictions contained in the TIA were erroneous.  Indeed, as set forth in detail in the Nordlicht Submission, the TIA did **not** prohibit Beechwood from voting its Black Elk bonds in favor of the Indenture change; it did not even prevent *Platinum* from voting its bonds in favor of the Indenture change.

WILSON
SONSINI

Honorable Brian M. Cogan
March 16, 2022
Page 5

The erroneous evidence and argument presented by the government concerning the TIA not only prejudiced Mr. Levy's right to a fair trial, as set forth in the Nordlicht Submission, but it also fatally infected the Second Circuit's evaluation of the very basis upon which this Court granted Mr. Levy's Rule 29 motion – that the government had failed to present sufficient evidence that Mr. Levy had criminal knowledge and intent when it came to the voting of Black Elk bonds.

As for the impact on the fairness of the trial, as the Court will recall, Mr. Levy maintained that the government failed to prove that he knew Platinum was not permitted to vote the Black Elk bonds. Mr. Levy had argued that the rules concerning the TIA and the Indenture were complicated, as evidenced by the fact that lawyers at three prominent law firms had misunderstood those rules when they had guided Platinum to vote its Black Elk bonds to effect the Indenture change. In response, the government focused on two emails that Mr. Levy had received setting forth the purported restriction *in the TIA* that bonds controlled by the obligor or affiliates of the obligor should not be counted, GX-536 (attached hereto as Exhibit 4) and GX-689 (Exhibit 2). The jury apparently credited those emails as providing sufficient evidence of Mr. Levy's knowledge and criminal intent – even though there was no evidence that Mr. Levy ever read the emails, responded to them, or acted upon them.

But the very emails the government pointed to encompassed yet more errors by the lawyers. Those emails referred to restrictions the *TIA* imposed on the change to the Indenture, but the lawyers were wrong again – the TIA imposed no such restrictions, as the Nordlicht Submission makes clear.

Currently pending before the Court is Mr. Levy's post-trial motion marshaling the government misconduct before and during the trial, and the erroneous evidence the government presented to the jury that had no basis in fact. Mr. Levy has argued that the government's conduct in these regards entitles him to a new trial.[2] The Court has not yet ruled on this motion. But the additional evidence that the lawyers advising Platinum were also wrong about the TIA would have

---

[2] In addition to the numerous examples of government misconduct set forth in our post-trial brief, a further review of the transcript has revealed numerous additional instances of knowingly false arguments from the government in its closing argument. For example, the government did not limit its misrepresentation about the voting of Black Elk bonds – wherein the government argued that the vote of the Platinum owned bonds assured the outcome of the vote – to its opening statement. The government also falsely argued to the jury in summation on the same score: that Platinum controlled 66% of the Black Elk bonds (which includes the Beechwood bonds and all the Platinum bonds) and that the defendants "illegally voted those bonds in favor of the changes Platinum wanted." Tr. 6612. The government knew perfectly well that the Platinum bonds were not counted in the vote, and its argument was plainly designed to mislead and prejudice the jury. This was not an isolated instance: the government also argued to the jury that "the final vote results" showed that 66% of bond holders voted for the consent only option. Tr. 6655. This too was knowingly false and designed to mislead the jury.

WILSON SONSINI

Honorable Brian M. Cogan
March 16, 2022
Page 6

been seismic.  One of two possibilities exist here:  the emails and argument would have come before the jury as they did at trial, and the defense would have then been able to argue the true extent to which the lawyers working on the transaction misunderstood the TIA (as did the prosecutors themselves), *or* the evidence would have been precluded as irrelevant, which would have precluded the very arguments about Mr. Levy that the prosecutors then made.  But both scenarios were precluded because at no time in advance of trial did the government advise the defense that it would be presenting evidence and argument relating to purported violations of the TIA.[3]  Moreover, the government provided no expert disclosure of any kind concerning the TIA and how it did or did not apply to the circumstances of this case.  And no disclosure was made pursuant to Rule 404(b) about any purported violations of the TIA.  As a result, the defense was not on notice that the government would be relying in any way on purported violations of the TIA to prove criminal intent on the part of Mr. Levy until trial was well underway.  At that point, the defense had no genuine opportunity to consult with an expert in the field or prepare expert disclosures – the date of which had long passed.  *See* Docket Order, dated Aug. 30, 2018 (setting defendants' expert disclosure deadline as Oct. 15, 2018).  Because the government's erroneous presentation of purported violations of the TIA had a material impact on the trial, and because such erroneous evidence should never have been presented, Mr. Levy's now supplemented motion for a new trial based on government misconduct should be granted.

Mr. Levy's renewed motion for acquittal pursuant to Rule 29 should also be granted.  This Court has already held that the government failed to prove that Mr. Levy had the requisite knowledge and intent to support a criminal conviction.  But the Second Circuit reversed that determination insofar as the "Affiliate Rule" was concerned based on the same two emails cited by the government below, GX-536 and GX-689 that Mr. Levy received.  2d Cir. Order at 55.[4]  These emails, however, do not address any limitation on votes contained in the Indenture, and instead address solely the TIA – and in erroneous terms, as we now know.  Indeed, the government presented *no evidence* at trial that Mr. Levy was aware of any provision in the Indenture limiting the votes of affiliates.  As a result, the two emails relied upon by the Second Circuit have now been revealed as falling woefully short of proving beyond a reasonable doubt that Mr. Levy had the requisite knowledge or criminal intent to overcome this Court's prior Rule 29 determination.  Accordingly, this Court should again grant Mr. Levy's Rule 29 motion on the basis of the newly discovered evidence that the TIA did not prohibit the voting of "Affiliated" bonds.

---

[3] The Indictment contains one reference to the TIA, and that is in paragraph 84, which is a quote from the consent solicitation prepared by Attorney Rob Shearer.  This quote could not have reasonably placed the defense on notice that the government would be arguing to the jury that Mr. Levy had violated the TIA.  Moreover, the Indictment did not allege any violation of the TIA.

[4] The Second Circuit identified a third email, GX-692 (GA.641) (attached hereto as <u>Exhibit 5</u>), but that email did not address the concept of excluding votes at all.

**WILSON SONSINI**

Honorable Brian M. Cogan
March 16, 2022
Page 7

      We respectfully request that the Court grant oral argument with respect to these issues.

      Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

s/ *Michael S. Sommer*
Michael S. Sommer
Morris J. Fodeman

*Counsel for Defendant David Levy*