

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
+1 212 698 3500 Main
+1 212 698 3599 Fax
www.dechert.com

**ANDREW J. LEVANDER**

andrew.levander@dechert.com
+1 212 698 3683 Direct
+1 212 698 3599 Fax

April 12, 2022

**VIA ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *United States v. Mark Nordlicht, et al.*, No. 1:16-cr-00640-BMC (E.D.N.Y.)

Dear Judge Cogan:

On behalf of defendants Mark Nordlicht and David Levy, we submit this reply in support of Mr. Nordlicht's and Mr. Levy's motions for a new trial under Federal Rule of Criminal Procedure 33. *See* Feb. 25, 2022, Order; E.D.N.Y. Local Rule 49.1.

This Court previously granted Mr. Nordlicht's and Mr. Levy's respective motions because the Court, having sat through the nine-week trial, was convinced that the convictions represented a miscarriage of justice. In their opening submissions, defendants showed that numerous other legal issues proved that fear entirely justified. The government's response fails to engage, let alone rebut, defendants' showing that there are multiple other reasons why a new trial is necessary:

- *First*, although the government's entire theory of the Black Elk fraud was based on the Trust Indenture Act of 1939 ("TIA"), the government now says that it does not matter what the statute says. The government dismisses the SEC's longstanding administrative interpretation and the unrebutted expert declaration of Professor Steven Schwartz of Duke Law School, but fails to explain how the government could have proven that Mr. Nordlicht and Mr. Levy defrauded other bondholders when the sole evidence of their purported knowledge and intent concerned a statutory prohibition that simply does not apply.

- *Second*, the government says even less about constructive amendment and prejudicial variance, resting entirely on its earlier briefing. In so doing, the government ignores Mr. Nordlicht's citation to the many Beechwood witnesses who, since trial, have confirmed his lack of control over Beechwood. Had the government disclosed its Beechwood theory earlier, then defendants could have called those witnesses. The government thus makes no effort to rebut the clear prejudicial impact from its mid-trial shift.

- *Third*, the government brushes off defendants' newly discovered evidence as known and available—again, without offering any rebuttal, this time to the declaration to the contrary



      from Mr. Levy's counsel.  The government asserts that defendants could have compelled Beechwood's senior executives to testify, yet their counsel told Mr. Levy's counsel before trial that these witnesses would invoke their Fifth Amendment privilege.  The Beechwood executives now have provided testimony that is as material as could be.  If Mr. Nordlicht had no control over Beechwood, then defendants are simply innocent of the crime charged.

At bottom, the government's case at closing rested on two pillars—the TIA's affiliate rule and Mr. Nordlicht's control over Beechwood—yet both pillars are made of sand.  The TIA simply did not prevent Mr. Nordlicht from voting any bonds, let alone Beechwood bonds, and Beechwood's most senior employees have since confirmed that Mr. Nordlicht did not control Beechwood.  As the Second Circuit itself recognized, these questions were the heart of the government's case.  *United States v. Landesman*, 17 F.4th 298, 334 (2d Cir. 2021).  Rule 33 grants the Court the authority to vacate the conviction precisely so that the Court may prevent such a miscarriage of justice.  The renewed Rule 33 motion should be granted.

**1.**     **The Government's False Evidence About the TIA Requires a New Trial**

The government's case was based on a false premise: contrary to the indictment and the government's opening statement, the TIA did not prohibit affiliates from voting.  Yet Mr. Nordlicht has now demonstrated that this underlying premise was false.  The TIA ***does not apply*** to amendment votes.[1]  In its opposition, the government makes no argument to the contrary; ***not once*** does it cite the TIA or explain how it applies.  Instead, the government says that defendants' convictions should stand anyway, that the TIA did not matter, and that Mr. Nordlicht's argument here is just a "different trial strategy."  Yet defendants may not be convicted for concealing a TIA violation that never took place.

Due process does not permit a conviction to be "obtained through use of false evidence."  *Napue v. People of State of Illinois*, 360 U.S. 264, 269 (1959).  The prosecution is an "officer of the court whose duty is to present a forceful *and truthful* case to the jury, not to win at any cost."  *Drake v. Portuondo*, 553 F.3d 230, 240 (2d Cir. 2009) (emphasis added).  Even if the defense also could have known that the testimony was false, the prosecution violates due process by introducing and reinforcing "false testimony [that] could have affected the judgment of the jury."  *United States v. Helmsley*, 985 F.2d 1202, 1205-06 (2d Cir. 1993); *see also Miles v. Scully*, 826 F.2d 1192, 1195 (2d Cir. 1987).

The government seeks to dismiss these cases by claiming that a prosecutor will only violate due process when he knowingly introduces ***perjured*** testimony, not just false testimony.  But due

---

[1] As Mr. Nordlicht explained in his initial submission, the TIA's affiliate rule applies only to votes "to direct the time, method, and place of conducting any proceeding for any remedy . . . or exercising any trust or power conferred upon such trustee, under such indenture."  15 U.S.C. § 77ppp(a)(1).  The vote to amend the indenture was not, of course, a vote to exercise a "remedy," "trust[,] or power" of the trustee.  *See id.*



process no more permits the government to capitalize on a witness's ignorance than his duplicity. The Second Circuit thus has made clear that due process prohibits the government from introducing "false testimony," not just perjured testimony. *Helmsley*, 985 F.2d at 1205-06. If the government knew, or should have known, that Mr. Shearer's testimony was false, then the conviction must be vacated, whether or not Mr. Shearer himself believed what he said.

The government also contends that Mr. Nordlicht's argument comes too late, but the Second Circuit has made clear that a false-testimony challenge may be brought at any time. *Id.* at 1206. The government thus cannot dismiss this argument as an effort to "pursue a different strategy at a new trial." If defendants were convicted based on false testimony, then those convictions must be vacated, whether or not their counsel could have discovered the TIA issue before. *See id.*

And the government here affirmatively relied on false testimony. First, there is no question that the government argued that defendants committed a fraud based on their alleged concealment of Black Elk's violation of the TIA. At trial, Mr. Shearer repeatedly testified that the TIA "requires that you exclude bonds" from the amendment vote process, pointing to emails and conversations where he informed Black Elk and Platinum's principals of the TIA's affiliate rule. Tr. 4832; *see also, e.g.*, Tr. 4755, 4851, 4863-66. The government capitalized on that testimony in closing, and the Second Circuit relied heavily on the same evidence. *See* Tr. 6668-69; *Landesman*, 17 F.4th at 310, 333, 337.

Second, in its opposition, the government does not even make any affirmative effort to defend the proposition that the TIA applies. The government completely ignores the plain text of the TIA and, rather than engage with the substance of Duke Law Professor Schwarcz's expert report, it dismisses the report as "self-serving."[2] *See* 15 U.S.C. § 77ppp(a)(1); Dkt. 888-13. The government's silence on the merits of its false TIA claim is telling.

Third, not only was the evidence false, but the government should have known it. Had the government simply read the TIA or googled the SEC's own guidance on the subject, then it would have seen that the TIA's affiliate rule did not apply. *See* 15 U.S.C. § 77ppp(a)(1); SEC, *Manual: Trust Indenture Act of 1939*, at 135 (June 30, 1958), available at https://bit.ly/36pLUnD; SEC, *Trust Indenture Act of 1939: Questions and Answers of General Applicability* §§ 215-16 (Apr. 24, 2015) https://bit.ly/3w6vSd3. It may be that defense counsel also could have identified that issue. But the Second Circuit has made clear that due process requires **the government** to present the truth, the whole truth, and nothing but the truth. *See Helmsley*, 985 F.2d at 1206. Because the government failed to do that, the conviction must be vacated. *See id.*

Finally, the government tries to argue that the truth of Shearer's testimony should not matter, because defendants were charged with wire fraud and conspiracy, not violating the TIA itself. But

---

[2] If there is any doubt about the veracity of Professor Schwarcz's expert report or the applicability of the TIA, Mr. Nordlicht urges this Court to hold an evidentiary hearing.


defendants' alleged knowledge concerning the TIA's affiliate rule was the *only evidence* of their supposed knowledge and intent to defraud. *See Landesman*, 17 F.4th at 332-333. The government cannot avoid that now by trying to say that defendants "acted in contravention of [Baker Hostetler's] advice." It is surely no crime for a client to demur from confusing and erroneous legal advice. So while defendants were not charged with violating the TIA as such, the indictment charged them with falsely representing that they would comply with the TIA, *see* Indictment ¶ 84, and the government's only evidence concerning their knowledge and intent was that they knew of the TIA rule and concealed its violation. But if there was no violation at all, then defendants could not have been found guilty. Our Constitution's guarantee of due process bars any conviction that rests on such false evidence.

**2.     The Constructive Amendment and Prejudicial Variance Warrant a New Trial**

In addition, the conviction should be set aside because the government worked a constructive amendment of, and prejudicial variance from, the indictment. As the opening briefs explained, the indictment charged defendants with a scheme to rig the outcome of the amendment vote by voting a controlling interest in bonds, including those held by PPLO and PPCO. Indictment ¶ 85. Yet, as Mr. Shearer testified, he did not count the votes from PPLO and PPCO. So the government devised a new and contradictory theory: that defendants hid a minority of bonds in Beechwood and failed to disclose that Beechwood was somehow a potential affiliate. Tr. 6666-69, 7082-88. That constructive amendment and prejudicial variance warrants a new trial. *See United States v. Davis*, No. 13-cr-923, 2017 WL 3328240, at *28 (S.D.N.Y. Aug. 3, 2017).

The government dismisses this argument as having been briefed before. But in so doing, the government ignores defendants' new showing—based on post-trial testimony—of the prejudice suffered from the government's variance. As discussed in the opening briefs, numerous Beechwood employees have since testified in civil litigation that Mr. Nordlicht did ***not*** control Beechwood. For example, Beechwood General Counsel Christian Thomas has confirmed that Mr. Nordlicht was, at most, "somebody that ideas would be bounced off of" and that anything from Mr. Nordlicht was "simply an idea." *See* Dkt. 888-18, Ex. R at 76:18-22; 146:2-7. Mr. Thomas thus made clear that Mr. Nordlicht "had no control over Beechwood or any aspect of its operations." *Id.* at 76:18-77:2; *see also id.* at 120:6-7; 146:2-5.

Had the indictment or the government's opening focused on Beechwood, then defendants would have undertaken to marshal these witnesses to show that Mr. Nordlicht did not control Beechwood. And such evidence would have been devastating to the government's case, had it been the focus of the defense. As this Court found when granting defendants' initial motion for a new trial, two Beechwood employees already testified that "Nordlicht gave recommendations to Beechwood but did not have the final say" and that Beechwood had its own management. Dkt. 799 at 34. On appeal, the government responded that those employees' testimony was "of limited probative value" because their "lower-level positions and the narrow scope of their duties at Beechwood" provided them "limited insight into the power that Nordlicht had over Beechwood." *See, e.g.*, Reply Br. of U.S., *United States v. Landesman*, No. 19-3207 ("USG Appeal Reply"), Dkt. 103 at


28, 48-49 (2d Cir. June 16, 2020). And when reversing, the Second Circuit discounted those employees' testimony as "vague" and "inconsistent." *United States v. Landesman*, 17 F.4th 298, 329-30, 335 n.5 (2d Cir. 2021). But such conclusions would have been untenable had the trial record contained the unequivocal testimony of Mr. Thomas or Beechwood's other senior officers.[3] As Beechwood's General Counsel, Thomas hardly occupied a "lower-level position," and his testimony would have been anything but "vague" or "inconsistent."

The government's mid-trial switch clearly prejudiced defendants. Had they known that the government's case would turn on Mr. Nordlicht's purported control over Beechwood, they could have called witnesses like Mr. Thomas, and this powerful testimony would surely have led to acquittal. Against that prejudice and the further evidence of defendants' innocence, the government offers nothing but its original brief. For this reason, too, a new trial is warranted.

**3.    Newly Discovered Evidence Warrants a New Trial**

The government likewise tries to brush off the newly discovered evidence of Mark Feuer and Scott Taylor's testimony as somehow irrelevant. But as President and CEO of Beechwood, these were the two most senior employees at Beechwood. They were responsible for the direction of Beechwood and were best positioned to explain that they did not take direction from Mr. Nordlicht. And because they refused to cooperate with defense counsel before trial, defendants had no way of knowing what they would have said on the stand. That newly discovered evidence thus, too, warrants a new trial. *United States v. Siddiqi*, 959 F.2d 1167, 1173 (2d Cir. 1992); *accord United States v. Allums*, No. 15-cr-153, 2020 WL 3790610, at *4 (S.D.N.Y. July 7, 2020).

The government argues that Mr. Feuer and Mr. Taylor are not "newly discovered," because defendants knew of the witnesses. But while Mr. Feuer and Mr. Taylor were known, ***what they would say*** was not. As explained by the declaration of Mr. Levy's trial counsel—which stands unrebutted—Mr. Feuer and Mr. Taylor refused to speak with or cooperate with defense counsel before trial. *See* Dkt. 888-19. Defendants thus did not know what Mr. Feuer or Mr. Taylor would say—and could not have compelled them to testify because they unequivocally said that they would invoke their Fifth Amendment rights if they were called to testify. *See id.*[4]

---

[3] Other senior Beechwood witnesses would have similarly corroborated Mr. Nordlicht's lack of control over Beechwood. *See, e.g.*, Dkt. 888-18, Ex. O at 761:21-23, 771:5-8 (Beechwood CEO Mark Feuer) (Mr. Nordlicht "was at best an advisor" to Beechwood); Dkt. 888-14, Ex. N at 268:2-16, 203:12-13, 279:25-280:12 (Mark Feuer) (as CEO, Mr. Feuer "was the ultimate decision-maker," and that, although Mr. Nordlicht often sent his thoughts, Mr. Feuer "ignored most of it" and "threw away most of them"); Dkt. 888-17, Ex. Q at 532:2-5, 15-16 (Beechwood President Scott Taylor) (he reported to Mr. Feuer, not Mr. Nordlicht, and Beechwood "is a separate business from Platinum").

[4] The government claims that defendants could have subpoenaed these witnesses and forced them to assert their Fifth Amendment right, but does not cite any case requiring such a pointless action. Defendants could plainly rely on counsel's representation that the witnesses would plead the Fifth.



That is why Mr. Feuer and Mr. Taylor are quite unlike the witnesses at issue in *United States v. Forbes*, 790 F.3d 403, 410 (2d Cir. 2015), where the defendant knew what a co-conspirator would have said before trial. Unlike *Forbes*, defendants were not "aware of the evidence before or during trial" because Mr. Feuer and Mr. Taylor were independent witnesses who refused to speak with defense counsel at all. *See id.* And unlike *Forbes*, defendants did not have any legal connection—as a co-defendant or co-conspirator—with Mr. Feuer or Mr. Taylor. Their testimony is thus far from the sort of testimony at issue in *Forbes*, which was as "rife for manipulation . . . [or] perjury" as the "post-conviction testimony offered by a convicted co-defendant." *Id.* To the contrary, Mr. Feuer and Mr. Taylor's testimony could not be imputed to Mr. Nordlicht, either directly or indirectly, and they have since made abundantly clear that Mr. Nordlicht did not control Beechwood.

Nor is the government correct that Mr. Feuer and Mr. Taylor's testimony would have been cumulative of that of Naftali Manela and Israel Wallach, two witnesses whom the government previously dismissed as "lower-level employees." The Second Circuit, too, found that these witnesses had given only "vague" or "inconsistent" testimony that in fact depended on hearsay from Mr. Feuer and Mr. Taylor. *Landesman*, 17 F.4th at 307, 329-30, 335 n.5. But Mr. Feuer and Mr. Taylor ran they show, as they testified after trial. *See* Dkt. 888-14; 888-15; 888-16; 888-17. If the Second Circuit had reviewed this unequivocal testimony from Beechwood's most senior officers, then it could hardly have dismissed the Beechwood testimony as "vague" or "inconsistent." To the contrary, Mr. Feuer and Mr. Taylor would have confirmed Mr. Wallach's testimony that, as this Court previously recognized, Mr. Nordlicht had no authority over Beechwood and merely maintained an "advisory role." Dkt. 799 at 34; Tr. 4069-79. This testimony thus would have been highly material and would likely have led to acquittal. (And for that matter, it likely would have led the Second Circuit to affirm this Court's Rule 33 decision.)

Nor may the government dismiss this newly discovered evidence on the ground that Mr. Feuer or Mr. Taylor could have been impeached. Of course, all witnesses may conceivably be subject to impeachment, but that does not mean that there can never be any newly discovered witness testimony. And the government does not muster any serious ground for impeachment. The government weakly suggests that Mr. Feuer may have been impeached by his FD-302 reports, but does not cite anything in the FD-302 report that either contradicts his later testimony (or gives any real detail as to Mr. Nordlicht's control). *See generally* Exs. A-B (Feuer FD-302 reports). The government also suggests that Mr. Feuer and Mr. Taylor could have been impeached by the fact that their deposition testimony arose in the face of civil accusations against them. But Mr. Feuer's and Mr. Taylor's testimony would surely have outweighed the government's thin evidence of Mr. Nordlicht's control. And if the Court has any doubt about the strength of their testimony, then the Court should hold an evidentiary hearing to address this issue.

Try as it might, the government cannot evade the facts. The government provided scant evidence at trial that Mr. Nordlicht actually controlled Beechwood. The Second Circuit reversed because of a few ambiguous emails and the "vague" and "inconsistent" testimony of two low-level Beechwood employees. But defendants have now discovered that Beechwood's President and



CEO (as well as its General Counsel) would have unequivocally testified that Mr. Nordlicht did not control Beechwood. That evidence would surely have led to acquittal and warrants a new trial.

**4. <u>Conclusion</u>**

At bottom, the government's theory was that defendants (1) violated the TIA because (2) Mr. Nordlicht controlled Beechwood yet voted its bonds. But both elements were untrue. The TIA never applied, and Mr. Nordlicht did not control Beechwood. Either of those gaping holes warrants a new trial. Together, they cry out for vacatur to avoid a miscarriage of justice. For these reasons, as well as those discussed in the opening submissions of Mr. Nordlicht and Mr. Levy, Mr. Nordlicht and Mr. Levy respectfully request that their Rule 33 motions be granted.

Mr. Nordlicht and Mr. Levy respectfully request the opportunity for oral argument on this motion.

                                                          Respectfully submitted,

| | |
|---|---|
| /s/ *Michael S. Sommer* | /s/ *Andrew J. Levander* |
| Michael S. Sommer | Andrew J. Levander |
| Morris J. Fodeman | Steven A. Engel |
| WILSON SOSINI GOODRICH & ROSATI | DECHERT LLP |
| 1301 Avenue of the Americas | Three Bryant Park |
| New York, NY 10019 | 1095 Avenue of the Americas |
| (212) 497-7728 | New York, NY 10036 |
| msommer@wsgr.com | (212) 698-3683 |
| | andrew.levander@dechert.com |
| *Counsel for David Levy* | |
| | Michael P. Corcoran |
| | DECHERT LLP |
| cc: All Counsel (via ECF) | 1900 K Street, NW |
| | Washington, DC 20006 |
| | |
| | *Counsel for Mark Nordlicht* |